

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/17/2009

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 03-48263-H4-13** |
| **JUDY WILBORN,** | § | |
| | § | **Chapter 13** |
| **Debtor** | § | |
| _____ | § | _____ |
| | § | |
| **JUDY WILBORN, KARLTON** | § | **Adversary No. 07-3481** |
| **FLOURNOY, MONICA FLOURNOY,** | § | |
| **and JUDITH MARTIN, on behalf of** | § | |
| **themselves and those similarly situated,** | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **WELLS FARGO BANK, N.A., f/k/a** | § | |
| **WELLS FARGO HOME MORTGAGE,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant** | § | |

## MEMORANDUM OPINION ON WELLS FARGO HOME MORTGAGE'S MOTION FOR RECUSAL
[Docket No. 73]

### I. INTRODUCTION

Judy Wilborn, the Debtor in this Chapter 13 case, along with Karlton Flournoy, Monica Flournoy, and Judith Martin (collectively, the Plaintiffs) initiated this adversary proceeding complaining that Wells Fargo Home Mortgage, Inc. (Wells Fargo), a division of Wells Fargo Bank, N.A., improperly assessed post-petition fees and charges against them and a class of other similarly situated debtors in violation of 11 U.S.C. § 506(b) and Federal Rule of Bankruptcy Procedure 2016 (Bankruptcy Rule 2016).

On October 30, 2008, Wells Fargo filed Wells Fargo Home Mortgage's Motion for Recusal

and Brief in Support (the Motion). [Docket No. 73.] The Motion alleges that the undersigned judge should be recused based on his oral and written statements during two Continuing Legal Education (CLE) presentations—one held in Dallas, Texas and the other held in Baton Rouge, Louisiana at the LSU law school.

A motion to recuse is committed to the discretion of the targeted judge. *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999). Accordingly, it is proper for this Court to adjudicate the Motion. Additionally, the undersigned judge has broad discretion in determining whether disqualification is appropriate. *See, e.g.*, *United States v. Mizell*, 88 F.3d 288, 299 (5th Cir. 1996) (citing *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993)). For the reasons set forth below, the undersigned judge believes he has an affirmative duty *not* to recuse himself in this suit and that the Motion should be denied.

## II. BRIEF OVERVIEW OF THE RECORD RELATING TO THE MOTION

Wells Fargo asserts that oral and written statements which the undersigned judge made at two CLE presentations reflect a general ill will towards creditors such that disqualification should be required. The evidence that Wells Fargo introduced in support of the Motion was the transcript of the undersigned judge's speech at the Dallas Seminar and the pages from a PowerPoint presentation made at the LSU Seminar. After listening to a video tape of the undersigned judge's presentation at the Dallas Seminar, the Court discovered a number of minor errors and inaccuracies in the transcript attached to the Motion. The Court requested the court reporter who transcribed the speech to make corrections and additions to the transcript, and both parties have stipulated to the accuracy of the revised transcript. The corrected transcript, which is attached to this Memorandum Opinion,

is an accurate record of the speech given by the undersigned judge at the Dallas Seminar.[1] However, the undersigned judge disagrees that he gave any speech in conjunction with the pages comprising the PowerPoint presentation made at the LSU Seminar. It was the Honorable Elizabeth Wall Magner, United States Bankruptcy Judge for the Eastern District of Louisiana, who prepared and presented the PowerPoint slides, which are attached to this Memorandum Opinion. The undersigned judge sat next to Judge Magner at the podium when she gave this presentation; Judge Magner and the undersigned judge, as part of the LSU seminar, each gave separate speeches under the rubric of "The Home Mortgage and Chapter 13 - The Hot Area." The undersigned judge gave his speech after Judge Magner made her PowerPoint presentation.[2]

## III. Factual Background

### A. The Dallas Seminar

Wells Fargo takes issue with the undersigned judge's presentation entitled "Rule 2016: Creditor Fee Applications," given at the State Bar of Texas's 24th Annual Advanced Consumer

---

[1] There is a small portion of the tape that is inaudible and therefore cannot be transcribed.

[2] Counsel for Wells Fargo, in paragraph 7 of his affidavit attached in support of the Motion, states that "[a]ttached . . . is a set of written materials which I learned of on October 29, 2008, and which I understand to constitute slides presented in a joint presentation by Judge Bohm and the Honorable Elizabeth Wall Magner." [Docket No. 73, Ex. C.] Then, in paragraph 19 of the Motion itself, counsel expressly alleges that these materials "were presented jointly by the judge, and by the Honorable Elizabeth Walls [sic] Magner." [Docket No. 73.] Wells Fargo has not established this allegation by clear and convincing evidence, which it must do given that it is seeking to disqualify the undersigned judge. *See Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 634 (5th Cir. 1971). Indeed, Wells Fargo adduced no testimony at all at the hearing on the Motion. Counsel for Wells Fargo did not personally attend the LSU Seminar, and the testimony in his affidavit, which is attached to the Motion, is rank hearsay. *Bd. of Pub. Instruction v. Meredith*, 119 F.2d 712, 713 (5th Cir. 1941) ("[U]sually ex parte affidavits are not sufficient to prove material facts in a contested case . . . ."); *see also, e.g., FTC v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 n.9 (5th Cir. 2004) (determining that certain affidavits were hearsay and did not qualify for any exception under Fed. R. Evid. 803 or 804). If counsel for Wells Fargo had attended the LSU Seminar, he would have heard and seen Judge Magner give her presentation using the PowerPoint slides, and then he would have heard and seen the undersigned judge give his presentation without using any of the PowerPoint slides.

Bankruptcy Course, in Dallas, Texas on September 18, 2008 (the Dallas Seminar).[3] The undersigned judge's presentation at the Dallas Seminar addressed four legal arguments commonly advanced by creditors with respect to Bankruptcy Rule 2016 that certain bankruptcy courts have rejected: (1) that Bankruptcy Rule 2016 does not apply to secured lenders; (2) that the right to fees in loan documents may not be modified by the courts through Bankruptcy Rule 2016; (3) that there is no private right of action to enforce Bankruptcy Rule 2016; and (4) that bankruptcy courts lack subject matter jurisdiction when a debtor challenges fees that have been charged post-confirmation.  In his Dallas speech, the undersigned judge began by reciting the language of Bankruptcy Rule 2016 and then directed the audience to the following cases: *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007); *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584 (Bankr. E.D. La. 2007); *Wells Fargo Bank, N.A. v. Jones*, Nos. 07-3599, 03-16518, 06-01093, 2008 WL 2635369 (E.D. La. July 1, 2008); and *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, No. 08-01004, 2008 WL 4371669 (Bankr. S.D. Tex. Sept. 18, 2008). The undersigned judge then addressed each argument in turn, pointing out the weaknesses in each, and explaining why this Court and other bankruptcy judges in the Fifth Circuit have rejected these legal arguments in the above-cited opinions.

With respect to the first legal argument—that Bankruptcy Rule 2016 does not apply to secured lenders—the undersigned judge made the following statements:

---

[3] The written materials presented by the undersigned judge at the Dallas Seminar were prepared by the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas. However, because Judge Isgur was unable to attend the Dallas Seminar, the undersigned judge presented those materials on Judge Isgur's behalf. These written materials consisted solely of published cases and did not contain any editorial comment by either Judge Isgur or the undersigned judge.

Now, let's deal with this argument that 2016 only applies to 503(b)(3) and (b)(4) creditors. It doesn't apply to creditors who are seeking fees and expenses solely to protect themselves. Well, let's do a textualist argument. Let's go to the rule.

The rule says, An entity seeking compensation for services or reimbursement of expenses from the estate shall file an application setting forth a detailed statement of the services rendered, time expended, expenses incurred. The phrase "from the estate" means what it says, says what it means. Chapter 13, The debtor's earnings are property of the estate. And if the creditor is getting paid from those earnings, which it assuredly is because those earnings are going to the trustee who's turning around and paying the creditor, or in some perverse, jurisdictions, those earnings are going directly to the creditor because they're not paying the trustee, which I think is dead wrong, but it happens in many jurisdictions.

That's property of the estate. QED as my Latin teacher would say, "quod est demonstrandum."[4] From the estate, earnings from the estate, Rule 2016 applies. Not a bad argument. It certainly convinces me, and I stand to be corrected by the Fifth Circuit. I have no doubt that at some point the Fifth Circuit is going to deal with this issue, so maybe they'll tell me I'm wrong, but I -- I think 2016 does apply to secured creditors, not just to 503(b)(3) and (b)(4) Claimants because of that language.

With respect to the second legal argument—that the right to fees in loan documents may not be modified by the courts through Bankruptcy Rule 2016—the undersigned judge made the following statements:

Let's go to the second argument, 1322(b)(2). The loan documents say we get the fees and expenses. You can't change the deal. Well, 1322(b)(2) doesn't immunize lenders from a review of fees and expenses just because the loan documents say they get their fees and expenses. Why? Well, both federal law and state law say that a lender gets its reasonable fees and expenses. The impliedly -- the argument from the lenders is: We can charge unreasonable fees and expenses. No one gets to look at -- the loan documents say we get it. Go away, court. Go away,

---

[4] The Latin phrase "quod est demonstrandum" means "thus it is proven." In this case, the fact that Bankruptcy Rule 2016 requires creditors to file an application with specific disclosures when seeking compensation or expenses "from the estate" demonstrates that such disclosures are required when fees are sought to be paid out of the debtor's earnings—which are assets of a Chapter 13 debtor's bankruptcy estate. 11 U.S.C. § 1306(a)(1) ("[p]roperty of the estate includes, in addition to the property specified in section 541 of this title . . . all property . . . that the debtor acquires after the commencement of the case but before the case is closed . . . ."); *see also Moser v. Mullican (In re Mullican)*, No. 07-4150, 2008 WL 5191196, at *7 (Bankr. E.D. Tex. 2008) (acknowledging that "most courts seem to have adopted an approach treating all post-confirmation earnings and post-confirmation property as property of the estate under § 1306(a)"). There is no language in Bankruptcy Rule 2016 that expressly states, or even suggests, that secured creditors are excepted from Bankruptcy Rule 2016's requirements.

debtor. Go away, other creditors.

Well, state law doesn't allow it. No lender I know can go into state court and say we get unreasonable fees and expenses. Why should you be able to do so in federal bankruptcy court or federal district court or the Fifth Circuit? And there's a good reason. You want to be able to award reasonable fees and expenses, but not unreasonable fees and expenses.

Why? You're not only looking out for the debtor. You're looking out for other creditors. For every dollar -- unreasonable dollar that goes into the pocket of a secured creditor is a dollar that could reasonably go to pay unsecured claims or maybe debtor's attorney's fees for getting a plan confirmed so that that lender gets paid its principal, interest, and reasonable attorney's fees and expenses. That's why they should be subject to scrutiny.

With respect to the third legal argument—that there is no private right of action to enforce Bankruptcy Rule 2016—the undersigned judge made the following statements:

Argument No. 3, There's no private right of action. Well, it seems to me that that's where *Marrama* -- and that's what I know Debbie Langehennig and Berry Spears were talking about this morning -- steps in.[5] It's where 105 comes in. It's certainly reviewed in the case law that was cited. And if creditors, or debtors, are going to violate the statute and violate the rules and not comply with them, then assuredly the bankruptcy courts under 105 and under the Supreme Court's direction in *Marra -- Marrama*, which is: Hey, if you see bad conduct going on, do something about it. Exercise your 105 powers. Exercise your inherent powers and put a stop to it.

So to say that there's no private right of action, it seems to me, is a -- you know, I -- I will paraphrase Abe Lincoln since I'm reading a book on him. Lawyer Lincoln once said in closing with that argument -- I think I'm right in saying this -- is about as thin as the shadow of a dead blackbird who has been boiled in oil at midnight on a rainy night in Illinois. I think that's where the no private right of action argument falls. If you can violate the law and turn around and say there's no private right of action, yeah, yeah, yeah, yeah, yeah, there is no -- there is no justice.

With respect to the fourth legal argument—that bankruptcy courts lack subject matter jurisdiction when a debtor challenges fees post-confirmation—the undersigned judge made the

---

[5] Deborah B. Langehennig, the Chapter 13 Trustee for the Austin Division of the Western District of Texas, and Berry D. Spears, a bankruptcy attorney and president of the bankruptcy section of the State Bar, gave a presentation at the Dallas Seminar entitled "Recent Developments in Consumer Bankruptcy 2008" at which they discussed the breadth of 11 U.S.C. § 105 and its use by bankruptcy courts.

following statements:

> The fourth argument, There's no jurisdiction postconfirmation for the bankruptcy court to do anything.  Cite:  *U.S. Brass* and *Craig's Stores* are the two most frequent cites I get from creditors' lawyers.  Those are both Chapter 11 cases.  There is no question, the Fifth Circuit has a more narrow interpretation of postconfirmation jurisdiction than some other circuits do.  You go look at Second Circuit law:  There's a much broader definition of view of postconfirmation jurisdiction.

> So, aside from the fact that *U.S. Brass* and *Craig's Stores* are Chapter 11 cases, you can still use them if you're a debtor's counsel to make an argument -- a pretty good one -- that the bankruptcy court does have postconfirmation jurisdiction in a Chapter 13 case.  For one, you still have an estate up and running typically until discharge is granted; whereas in Chapter 11, you typically don't have an estate up and running once a plan is confirmed.

> And that's really what the Fifth Circuit says in *Craig's Stores* and *U.S. Brass*:  Once the estate goes away, the bankruptcy court loses jurisdiction except on orders relating to implementation or interpretation of the plan.  Well, in a Chapter 13, you typically have the estate still up and running until discharge is granted, but even if you didn't, you've got actions being taken by creditors if they're not abiding by 2016, which breached the plan, breached the automatic stay.  And it seems to me those go to effectuating, implementing the plan.  So I think even under *Craig's Stores* and *U.S. Brass*, a bankruptcy court has plenty of postconfirmation jurisdiction in a Chapter 13 case to deal with creditors who don't comply with 2016.

> Judge Isgur in this case I just cited to you, *Rodriguez v. Countrywide*, does a very fine job of reviewing subject matter jurisdiction.  And he reviews subject matter jurisdiction in -- over plan administration, subject matter jurisdiction over closed cases -- and does a very good job of showing how the Fifth Circuit has held that a bankruptcy court has subject matter jurisdiction postclosure to protect the rights the debtors have under the Bankruptcy Code.

> And so the notion that bankruptcy courts don't have jurisdiction to deal with creditors who don't comply with 2016 will not hold water, at least not in my court and not in Judge Isgur's court and I don't think it's going to hold water at the Fifth Circuit.  You may prevail if you're a creditor on some other theory, for example, that 2016 doesn't apply to secured creditors, but I don't think you're going to hold -- I don't think you're going to find that the Fifth Circuit is going to say the bankruptcy courts don't have jurisdiction to enforce their own confirmation orders.

The undersigned judge then discussed the importance of subjecting fees and costs to a

reasonableness standard and explained how attorneys may prove that their fees are reasonable under

Texas law.  The undersigned judge also expressed concern that some creditors may be filing proofs

of claim as vehicles to charge fees and expenses without complying with Bankruptcy Rule 2016.

He cautioned that failures to comply with Bankruptcy Rule 2016 would go unnoticed unless debtors'

attorneys take the initiative to ensure the rule is complied with.

Wells Fargo takes issue with the undersigned judge's recommended practices for debtor's

attorneys to ensure creditor compliance with Bankruptcy Rule 2016:

> Primarily, I'm sure those of you who are sitting in the room who are debtors' attorneys are saying, Why in living heck should I care about 2016 fee applications for creditors? And the only thing I can tell you to say is, is if you are zealously representing your client, then you want to focus like a laser beam, it seems to me, on what some creditors are doing in terms of charging your clients after they have filed a petition. And I am assuming, by the way, that this is a Chapter 13 case. This is a consumer bankruptcy conference, so I'm not going to go into 11s. I'm going to stick to 13s.
>
> Judge Isgur had given you four cases in the booklet. He had given you his case of *Padilla*. He had given you my case of *Sanchez*. He had given you Judge Magner's case out of Louisiana of *Jones*, and then the district judge's opinion which affirmed in part and reversed in part -- and it was District Judge Helen Barrigan.
>
> I'm also going to cite you a couple of other cases. I have one literally hot off the press. My fingers are burning. Judge Isgur faxed it to me today. It went on the docket today -- is *Rodriguez v. Countrywide Home Loans, Inc.* -- *Rodriguez v. Countrywide Home Loans, Inc.*, Adversary 08-01004. And it certainly gets into portions of today's topic.
>
> . . . .
>
> For those of you who are debtor's counsels out there, I would tell you, if I were you, if I were practicing today and representing debtors, I'd have a form letter that says: Dear attorney for home lender in Chapter 13, I am writing you this letter to inquire as to whether your client is charging any fees and expenses now that my client has filed for bankruptcy. Please advise. Because if I find out that you are and you haven't disclosed it, I'm going to scream bloody murder in bankruptcy court.
>
> I think you ought to send that letter once every month. That might get the attention of some creditors' lawyers. And it might -- and I say might get the attention of some of the lenders.

Wells Fargo also takes issue with the undersigned judge's closing comments with respect to

the current financial climate and how the recent economic downturn may be symptomatic of a

general willingness of financial institutions to disregard rules like Bankruptcy Rule 2016. In closing,

8

the undersigned judge made the following comments:

My other closing thoughts are this: Today's USA [Today] and today's Wall Street Journal. "Mounting Fears Shake World Markets as Banking Giants Rush to Raise Capital." "Credit markets in crisis." "Federal bailouts, 900 billion." We've got 200 billion to buy Fannie Mae and Freddie Mac stock -- your tax-paying dollars and mine. We've got 87 billion to JPMorgan Chase for financing Lehman. We've got 85 billion going to AIG. We've got 29 billion financing for JPMorgan Chase to buy Bear Stearns. We've got 200 billion loans to banks through the Fed's term auction facilities.

Why do I cite these newspapers to you? Freddie Mac, Fannie Mae, AIG and the Lehman Brothers. I don't think I cited Washington Mutual, but I'll cite them. What are they all? They're creditors. I used to represent creditors. I used to be a banker before I went to law school. Well, I am finding since I've been on the bench on the creditors' side is that we've got a culture going of a combination of arrogance and hubris. We have forgotten how to be thorough and how to pay attention to detail, and it's coming home to roost in spades.

I mean, think about it, folks. Freddie Mac and Fannie Mae. F.D.R. would be turning over in his grave if he could see those institutions today.[6] The directors, the dispute that's going on right now is, Are we going to pay the two presidents of these institutions golden parachutes of millions of millions of dollars? This, for while they were head of their ships, ran aground.

We've got AIG going belly up. By the way, Freddie Mac and Fannie Mae, the institutions that are buying loan portfolios for loans that never should have been made. That's why I say we've got -- we have lost the need -- the paying attention to detail.

I think I heard the gentleman from Freddie Mac today and I wrote it down here. Don't buy -- "Buy the house you want. Don't buy the house you can afford." Well, it seems like you can translate that to: "Buy the loan portfolio you want, not the one you can afford."

It's not good. And I see it among the creditors in my court when they come in and tell me: We don't need to attach documentation. We're the creditor. Trust us. We don't need to prove that we're an assignee. We took the darn stuff electronically, and by God, we're not going to take the time and money to prove it to you, Judge. So I think it's a culture that -- that is across the board.

How can -- how can governmental instrumentalities like Freddie Mac and Fannie Mae be belly up? It can only be because of lack of diligence and arrogance and hubris and not paying attention to detail. I hope that the lawyers for these

---

[6] Fannie Mae (the Federal National Mortgage Association) was established in 1938 and added to the Federal Home Mortgage Association as part of President Franklin D. Roosevelt's "New Deal." *See* Julia Patterson Forrester, *Fannie Mae/Freddie Mac Uniform Mortgage Instruments: The Forgotten Benefit to Homeowners*, 72 Mo. L. Rev. 1077, 1081 (2007).

creditor clients will encourage their clients to -- to pay them for coming to court prepared and having paid attention to detail. Most of the creditors' lawyers who appear in my court are doing that, and I hope that's because since I've been on the bench, I've been trying to get the message out that I want you to come prepared and I want you to jump through the hoops that the rules require you to do so.

And the notion that you don't have to comply because for whatever reason your client, as one creditors' attorney said to this judge in Ohio: "Judge, you just don't understand how the system works." That's what I mean by arrogance and hubris. We've got to go back to the basics.

When I was a lender, I was taught the three C's. You look at collateral. You look at cash flow. You look at character, and you don't make the loan unless all three are satisfied. That ain't what's been going on now, is it? These trusts that hold all these mortgages, they're not looking at that. They just want their interest income, and then they pass it on to the second assignee and the third assignee and the fourth assignee. And then when it lands up in bankruptcy court, I get proofs of claims by the sixth assignee who can't even give me a loan history for the entire loan because they can't get it from the fifth assignee who can't get it from the fourth assignee who can't get it from the third assignee and so forth down the line. That ain't going to cut it with me.

I'm policing my docket. You're going to get more opinions, at least from me, and I assume the true -- same will be true for at least Judge Isgur and Judge Magner. We want to see I's dotted and T's crossed, and if they're not, then as I've said, 105 sanctions will be -- will be used.

I hate to end on that kind of note, but given where we are with a lot of the institutions that I just cited, I don't know how else to express my frustration with some -- not all, some of the mortgage lenders in my court. I wish to emphasize that I -- I think highly of most, virtually all, of the attorneys who appear in my court these days, so I don't want you to leave this seminar thinking that I am upset with you, but do please convey to your clients that I feel very strongly that the rules and the statutes need to be complied with.

## B. The LSU Seminar

Wells Fargo also asserts that a PowerPoint presentation given by the Honorable Elizabeth Wall Magner[7] at a seminar sponsored by the LSU Center of Continuing Professional Development on October 9 and 10, 2008 (the LSU Seminar), constitutes grounds for recusal of the undersigned judge in this case because he sat on the same speakers' panel with Judge Magner. Although Judge

---

[7] Judge Magner is a United States Bankruptcy Judge for the Eastern District of Louisiana.

10

Magner and the undersigned judge sat on the same panel at the LSU Seminar, each spoke separately about different issues. Judge Magner presented her PowerPoint slides and spoke for the first forty-five minutes of the presentation, and the undersigned judge spoke, based on his own written materials, for the last forty-five minutes. The undersigned judge did not assist in preparing Judge Magner's PowerPoint slides nor did he join in her presentation of these slides or use them when he himself was making his presentation.

Wells Fargo points to the following PowerPoint slides to support its position that the undersigned judge should recuse himself:

Slide 1

HOW SERVICERS MAKE MONEY
SERVICING FEES
FLOAT INCOME
LOAN FEES
TRUST INVESTMENT

Slide 2

SERVICING FEES

Payable monthly,
usually stated as a
percentage of the total unpaid
loan balances
under management

Slide 3

FLOAT INCOME

As funds are collected from borrowers,
they are held by the servicer
for days or months.
Servicers are allowed to invest these funds
and keep all the income generated.

Examples of funds held:
escrow, suspense, investor funds

SEC filings indicate that Ocwen Financial held
$677 million in escrow balances and earned
$30 million or 9% of its gross revenues on float
in 2007

Countrywide held over $19 billion in escrow as of
December 2007

<u>Slide 4</u>

LOAN FEES

Fees and charges assessed on a borrower's loan account

Common examples:
Late fees, inspection fees, broker's price opinions,
payoff quote fees, document retreival fees, lost note fees,
NSF fees, fax fees, etc.

Small fees add up!
In 2007:
Ocwen earned $40 million in fees
Countrywide earned $285 million in fees
Wells Fargo manages 7.7 million loans. If only one $15 fee
were charged per year on each loan, its revenue would be
$115 million

<u>Slide 5</u>

So How Do These Tensions Effect A Loan's Administration?

In order to maximize income, servicers have an incentive to assess
and collect fees and charges, hold payments in suspense, and
increase escrow deposits.
Note holders are only interested in collecting principal
and interest.

Most fees and charges are only available on default or
late payment, so servicers benefit from defaults since
their money is not at risk.

Servicers have incentive to increase the amounts
struggling debtors must pay through fees and escrow
increases rather than waive these amounts or work through installment defaults.

Even though the undersigned judge delivered his portion of the presentation separately, and

did not help prepare the PowerPoint slides, or even see them before Judge Magner's presentation,

Wells Fargo asserts that these slides "reflect that the Judge's impartiality—specifically relating to

Wells Fargo—might reasonably be questioned." [Docket No. 73.]

## IV. Conclusions of Law

### A. Jurisdiction and Venue

The Court has jurisdiction over this adversary proceeding, and the Motion brought in this

adversary proceeding, pursuant to 28 U.S.C. §§ 1334(b) and 157(a).  This proceeding is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Additionally, this proceeding is a core proceeding

under the general "catch-all" language of 28 U.S.C. § 157(b)(2).  *See In re Southmark Corp.*, 163

F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive

right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of

a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, at *19 (Bankr. S.D. Tex. Dec. 22, 2006)

(holding that an "Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2) even

though the laundry list of core proceedings under § 157(b)(2) does not specifically name this

particular circumstance").  Venue is proper pursuant to 28 U.S.C. § 1409.

### B. Disqualification Under 28 U.S.C. § 455(a)

Federal Rule of Bankruptcy Procedure 5004(a) provides that disqualification of a bankruptcy

judge shall be governed by 28 U.S.C. § 455.  Section 455(a) provides that a judge "shall disqualify

himself in any proceeding in which he is presiding in which his impartiality might reasonably be

questioned." 28 U.S.C. § 455(a).  A judge is presumed to be qualified to preside over a case.  *In re*

*Betts*, 143 B.R. 1016, 1022 (N.D. Ill. 1992) (citing *Idaho v. Freeman*, 478 F. Supp. 33 (D. Idaho

1979)).  Moreover, a movant seeking disqualification bears the burden of proving that a judge is not

qualified by clear and convincing evidence.  *See Kinnear-Weed Corp. v. Humble Oil & Refining Co.*,

441 F.2d 631, 634 (5th Cir. 1971).  Finally,  "a judge's comment is disqualifying only if it connotes

. . . a closed mind on the merits of the case."  *United States v. Halderman*, 559 F.2d 31, 136 (D.C.

Cir. 1976).

      When considering a motion to disqualify pursuant to § 455(a), the Court applies an objective

standard to determine whether a reasonable person with knowledge of the relevant facts would

conclude that the judge's impartiality might reasonably be questioned. *Lilieberg v. Health Servs.*

*Acquisition Corp.*, 486 U.S. 847, 850 (1988);  *In re Whet*, 33 B.R. 424, 426-27 (Bankr. D. Mass.

1983); *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976); *Parrish v. Bd. of Comm'rs of*

*Ala. State Bar*, 524 F.2d 98, 103 (5th Cir. 1975).  The Fifth Circuit has held that "each section 455(a)

case is extremely fact intensive and fact bound, and must be judged on its unique facts and

circumstances."  *United States v. Anderson*, 160 F.3d 231, 234 (5th Cir. 1998); *see also United*

*States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995); *United States v. Bremers*, 195 F.3d 221, 226 (5th

Cir. 1999).

      A judge's comments that form the basis of a recusal motion should not be viewed in

isolation, but rather must be viewed in context.  *See, e.g., LoCascio v. United States*, 473 F.3d 493,

497 (2d Cir. 2007) (finding that a judge's comments during a scheduling hearing, when read in

context, "revealed neither 'an opinion that derives from an extrajudicial source' nor 'such a high

degree of favoritism or antagonism as to make fair judgment impossible'"); *United States v.*

*Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000) (holding that recusal based on the judge's comments

relating to a party's pleadings was not warranted "after reviewing the judge's comments in context");

*In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997) (determining that judge's remark that the

plaintiffs were "political sweet potatoes" and that they should "forget the Constitution," when

viewed in context, were little more than an appropriate warning to plaintiffs' counsel).

The Supreme Court has explained that § 455(a) provides two avenues for recusal based on

apparent bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The first is where there is a danger

that the judge will rely on "an extrajudicial source" for his rulings in a particular case. *Id.* The

second is where the judge displays "such a high degree of favoritism or antagonism as to make fair

judgment impossible." *Id.* The Supreme Court provided the following reasoning:

> First, judicial rulings alone almost never constitute a valid basis for a bias or
> partiality motion. In and of themselves (i.e., apart from surrounding comments or
> accompanying opinion), they cannot possibly show reliance upon an extrajudicial
> source; and can only in the rarest circumstances evidence the degree of favoritism or
> antagonism required (as discussed below) when no extrajudicial source is involved.
> Almost invariably, they are proper grounds for appeal, not for recusal. Second,
> opinions formed by the judge on the basis of facts introduced or events occurring in
> the course of the current proceedings, or of prior proceedings, do not constitute a
> basis for a bias or partiality motion unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible. Thus, judicial remarks during
> the course of a trial that are critical or disapproving of, or even hostile to, counsel,
> the parties, or their cases, ordinarily do not support a bias or partiality challenge.
> They may do so if they reveal an opinion that derives from an extrajudicial source;
> and they will do so if they reveal such a high degree of favoritism or antagonism as
> to make fair judgment impossible.

*Id.* at 555 (citations omitted).

It is well settled that a judge has "an affirmative duty . . . not to disqualify himself

unnecessarily." *Nat'l Autobrokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978).

Indeed, "a judge has as much of a duty not to recuse himself absent a factual basis for doing so as

he does to step aside when recusal is warranted." *Id.*

### 1. The Undersigned Judge's Statements at the Dallas Seminar Presentation

Wells Fargo asserts that the undersigned judge's comments at the Dallas Seminar stem from an "extrajudicial source" because they occurred "at a CLE seminar and were rooted in part in national politics and economics." [Docket No. 73.] Wells Fargo also contends that the undersigned judge's comments at the Dallas Seminar "can be seen as a defense of his prior rulings and as a comment on future decisions, both of which give rise to an appearance of impartiality." [Docket No. 73.] Finally, Wells Fargo asserts that even though the undersigned judge did not mention Wells Fargo specifically, his comments "have a direct effect on the appearance of the judge's impartiality in this case" because "Wells Fargo has asserted defenses specifically disregarded by the Judge in the seminar"[8] and because "Wells Fargo is a secured creditor of the Plaintiffs and therefore in the direct path of the Judge's extrajudicial comments." [Docket No. 73.]

### a. Disqualification Based on a Judge's Expressed Opinion on Legal Issues

The Supreme Court has held that opinions formed by judges on the basis of facts introduced in the course of current or prior proceedings "almost never constitute a valid basis for a bias or partiality motion . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States*

---

[8] The Court notes that the undersigned judge did not "disregard" Wells Fargo's defenses at the Dallas Seminar; rather, he commented on recent rulings by the bankruptcy judges of the Southern District of Texas and the Eastern District of Louisiana, including this Court's own prior rulings, that rejected similar arguments to those asserted by Wells Fargo in this suit. Indeed, it appears that Wells Fargo is more worried that the undersigned judge will *apply* precedent from these districts than *disregard* it. Congress has cautioned that "[e]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision." H.R.Rep. No. 93-1453, 93rd Cong., 2nd Sess., 1974 U.S.C.C.A.N. 6351, 6355; *see also In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (noting that "[a] thoughtful observer understands that putting disqualification in the hands of a party, whose real fear may be that the judge will apply rather than disregard the law," would undermine the adjudicative process).

*v. Conforte*, 624 F.2d 869, 882 (9th Cir. 1980) ("A judge's views on legal issues may not serve as

the basis for motions to disqualify."); *Kahn v. Yusufji (In re M. Ibrahim Khan, P.S.C.)*, 751 F.2d 162,

164 (6th Cir. 1984) ("[B]ias sufficient to justify recusal must be a personal one and not one arising

from the judge's view of the law."); *Johnston v. Citizens Bank & Trust Co.*, 659 F.2d 865, 869 (8th

Cir. 1981) (holding that a judge's remarks about his distaste for the state usury law was not grounds

for recusal because "[t]he judge merely expressed a viewpoint concerning a legal issue"); *United*

*States v. Halderman*, 559 F.2d 31, 136 (D.C. Cir. 1976) ("[A]lthough fixed, an opinion on the law

is not disqualifying."); *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110,

1115 (E.D. La. 1986) ("The judge is permitted to fully express himself on legal matters.").

Additionally, as a general matter, "[a] judge's remarks made outside of court do not provide a basis

for recusal unless the movant shows actual bias against the particular party involved." *McBeth v.*

*Nissan Motor Corp. U.S.A.*, 921 F. Supp. 1473 (D.S.C. 1996).[9]

Wells Fargo cites *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001) for the

proposition that "recusal based on a lack of impartiality can arise when a judge makes public

---

[9] The United States District Court for the District of South Carolina collected the following cases in support of this proposition: *United States v. Poludniak*, 657 F.2d 948 (8th Cir. 1981) (Judge's remarks in newspapers and magazines about pending case do not warrant recusal); *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958 (5th Cir. 1980) (Judge's remarks to attorneys involved in pending case out of court not sufficient to warrant disqualification); *United States v. Conforte*, 624 F.2d 869 (9th Cir. 1980) (Judge's remarks in social setting against a particular defendant not sufficient for disqualification); *United States v. Schreiber*, 599 F.2d 534, 537-38 (3rd Cir. 1979) (Judge not disqualified in trial of motor carrier company president for filing false statement with the ICC, although judge believed from past experience that presidents of motor carriers routinely lie to the ICC), *cert. denied*, 444 U.S. 843 (1979); *Scarrella v. Midwest Federal Sav. & Loan*, 536 F.2d 1207 (8th Cir. 1976) (Judge's remarks that others should prevent citizens from freely speaking do not require disqualification); *United States v. Bd. of School Comm'rs*, 503 F.2d 68 (7th Cir. 1974) (Judge's remarks in newspaper about reasoning for decision in pending matter not sufficient); *Loew's Inc. v. Cole*, 185 F.2d 641, 646 (9th Cir. 1950) (Judge's statement that if one of the employees discharged for behavior before congressional committee came before him, he would have to decide in his favor, not disqualifying because expressing a view of law); *Commonwealth of Pennsylvania v. Local Union 542, Int. Union of Op. Eng'rs*, 388 F. Supp. 155 (E.D. Pa. 1974) (Judge's remarks in public setting based on judge's background and not commenting on particular cases no grounds for recusal).

statements expressing a particular legal perspective . . . generally." [Docket No. 73.] However, that case contains no such language, nor is this an accurate statement of the law. *Boston's Children First* dealt with a judge's comments to a news outlet regarding class certification in a pending case. The judge made the following comments to the Boston Herald newspaper that warranted disqualification: "In the [*Mack*] case, there was no issue as to whether [the plaintiffs] were injured. It was absolutely clear every woman had a claim. This is a more complex case." *Id.* at 166. These statements were held to be proper grounds for disqualification for distinct reasons inapplicable to the suit at bar. First, the First Circuit noted that "in newsworthy cases where tensions are high, judges should be particularly cautious about commenting on pending litigation." *Id.* at 169-70. Not only did the judge in *Boston's Children First* make comments to the news media about a highly publicized case pending before her; she made comments that might be reasonably perceived "as a preview of a ruling on the merits of petitioner's motion for class certification." *Id.* at 170. Second, and particularly relevant to the present case, the First Circuit explained that although Canon 3(A)(6) of the Code of Judicial Conduct instructs that a judge should avoid public comments on the merits of a pending action, this proscription does not extend to "public statements made in the course of the judge's official duties, to the explanation of court procedures, or to *a scholarly presentation made for the purposes of legal education.*" *Id.* at 168 (emphasis added). *Boston's Children First* is not only factually distinguishable from the present case; it affirmatively cautions against disqualifying judges based on legal opinions expressed at CLE presentations.

Unlike the judge in *Boston's Children First*, the undersigned judge did not make any comments at the Dallas Seminar about the adversary proceeding at bar. Rather, the undersigned judge gave a speech to a room of consumer bankruptcy practitioners about fee applications under

Bankruptcy Rule 2016 and § 506 of the Bankruptcy Code and recent applicable case law about this rule and this statute. Indeed, the undersigned judge declined to comment on prior rulings that this Court has issued, but which are presently on appeal. *See infra* note 11.

The facts giving rise to the Motion are more akin to those in *McBeth v. Nissan Motor Corp. U.S.A.*, 921 F. Supp. 1473 (D.S.C. 1996), and *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees & Restaurant Employees International Union*, 332 F. Supp. 2d 667 (S.D.N.Y. 2004).

In *McBeth*, the defendants sought to recuse a judge based on statements made at an automobile torts seminar that "impugned the intelligence and integrity of defense attorneys, cheered their defeats, and applauded their dissatisfaction with recent court decisions." *McBeth*, 921 F. Supp. at 1479. The court determined that the judge's statements were not grounds for disqualification because: (a) a reasonable observer would believe that they were intended to be humorous, and (b) even if they were not meant to be humorous, "(1) attitudes expressed outside of court are not enough for disqualification; (2) sympathies for a certain side in litigation are not enough; (3) predispositions in certain types of cases are not enough; (4) comments against counsel are not enough; and (5) comments against the same party in different lawsuits are not enough." *Id.* The court held that the judge's remarks at the seminar about the negative attributes of defense attorneys did not provide a basis for recusal. *Id.* at 1489. In so holding, the *McBeth* court relied on the Supreme Court's reasoning in *Liteky* that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after being confirmed as federal judges, sometimes display" do not rise to the level of bias or partiality necessary to carry a motion to disqualify. *Id.* at 1478 (quoting *Liteky*, 510 U.S. at 555-56).

Here, the undersigned judge's disagreement with certain legal arguments previously rejected by this Court and others, expressed at the Dallas Seminar, are not sufficient to warrant recusal. Further, to the extent that Wells Fargo perceives some of the undersigned judge's comments as expressions of sympathy for debtors,[10] or as reflections of a general predisposition in post-confirmation fee matters, neither is legally sufficient to require recusal. *Id.* at 1489.

In *Metropolitan Opera*, the District Court for the Southern District of New York similarly held that a judge's discussion of a pending case at a CLE seminar did not require disqualification under § 455(a). *Metropolitan Opera Ass'n, Inc.*, 332 F. Supp. 2d at 676. In that case, the movant argued that the judge displayed an "emotional commitment to one side of the dispute" by using the movant as an example at an electronic discovery seminar. *Id.* at 672. At the seminar, the judge

---

[10] This Court has no more sympathy for debtors who fail to comply with the Bankruptcy Code and the Bankruptcy Rules than it does for creditors who do not comply with the rules. *See generally, e.g., Havis v. AIG Sunamerica Life Assurance Co. (In re Bossart)*, No. 06-3540, 2007 WL 4561300 (Bankr. S.D. Tex. Dec. 21, 2007) (permitting the Chapter 7 trustee to avoid the debtor's purchase of an annuity on the eve of bankruptcy as a fraudulent transfer); *In re Sissom*, 366 B.R. 677 (Bankr. S.D. Tex. 2007) (sustaining Chapter 7 trustee's objection to debtor's claimed homestead and personal property exemptions on the grounds that the debtor disposed of non-exempt stock with the intent to hinder, delay, or defraud creditors); *In re Cochener*, 360 B.R. 542 (Bankr. S.D. Tex. 2007) (sanctioning debtor for abusing the bankruptcy process, including filing false schedules, failing to appear at creditors' meetings, and failing to produce certain documents to the Chapter 7 trustee); *In re Ortiz*, No. 05-39982, 2006 WL 2946500 (Bankr. S.D. Tex. Oct. 13, 2006) (sanctioning debtor for various abuses of the bankruptcy process, including filing a second petition in direct violation of another bankruptcy judge's order, failing to file accurate schedules, and failing to appear at a scheduled show cause hearing); *Askanase v. Lawley (In re Lawley)*, No. 05-03296, 2006 WL 2090209 (Bankr. S.D. Tex. June 30, 2006) (denying Chapter 7 debtor's motion for rehearing of this Court's order denying the debtor a discharge where the debtor failed to schedule certain assets, failed to produce documents, and failed to disclose an interest in an oil and gas leasehold); *In re Davenport*, 353 B.R. 150 (Bankr. S.D. Tex. 2006) (concluding that an employee's claim against the debtor was nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because the debtor embezzled funds that should have been paid to the employee and engaged in a consistent practice of deceit and unethical conduct); *Smith v. Lounsbury (In re Amberjack Interests, Inc.)*, 326 B.R. 379 (Bankr. S.D. Tex. 2005) (awarding fees, expenses, and exemplary damages to the trustee for the debtor's principals' various fraudulent transactions); *Gebhardt v. Gartner (In re Gartner)*, 326 B.R. 357 (Bankr. S.D. Tex. 2005) (denying Chapter 7 debtor a discharge where the debtor failed to schedule certain assets with the intent to deceive and failed to disclose certain financial records); *In re Solly*, 392 B.R. 692 (Bankr. S.D. Tex. 2008) (refusing to allow debtor's claimed exemption of an asset scheduled as having "unknown" value because such practice violates § 522 and is inconsistent with the purposes of the Bankruptcy Code); *In re Calvin*, 329 B.R. 589 (Bankr. S.D. Tex. 2005) (holding that Wells Fargo's practice of administratively "freezing" certain accounts in the name of Chapter 7 debtors was sound business policy that did not violate the automatic stay because, at the time of the freeze, the funds were still property of the Chapter 7 estate subject solely to the control of the Chapter 7 trustee).

revealed that the movant had "junked" computers without notifying the other side and remarked that the movant's discovery failures were some of his "personal favorites." *Id.* at 672. Even though these comments were made with respect to a litigant in a pending case, the court determined that these statements were not enough to objectively manifest a personal bias under § 455(a). *Id.* at 672-74. The District Court for the Southern District of New York held that a judge's summary of factual findings in a previous opinion, "used as a springboard in the presentation to discuss 'best practices' in electronic discovery to avoid such findings [in the future], is insufficient to require recusal." *Id.* at 674-75.

At the Dallas Seminar, the undersigned judge did something very similar to the judge in *Metropolitan Opera*—discussing "best practices" and urging creditors to make full disclosure with respect to post-petition fees, though he did so without reference to a pending case. A reasonable observer would perceive that the undersigned judge's CLE presentation was meant to aid, rather than to disparage, creditors. By listing legal arguments that have been, and will likely continue to be, unavailing with respect to post-petition fee applications, creditors may focus their energies on other arguments, or, even better, may simply make the requisite disclosures under Bankruptcy Rule 2016 before collecting post-petition fees. Additionally, the undersigned judge took special care to refrain from speaking about suits still pending before him specifically to avoid making the sort of comments

that concerned the movant in *Metropolitan Opera*.[11]  Certainly, if the *Metropolitan Opera* judge's

comments about a *party*'s failures in a *pending* case were not grounds for recusal, neither is the

undersigned judge's remark that he "continue[s] to be amazed by Countrywide," an entity unrelated

to Wells Fargo or the pending case.

The District Court for the Western District of Pennsylvania aptly described "the critical

distinction between a federal judge's expression of personal philosophy (which is certainly

permissible) and his expression of an opinion on some facet of a particular case which is before him

(which would be impermissible)."  *Samuel v. Univ. of Pittsburgh*, 395 F. Supp. 1275, 1278 (W.D.

Penn. 1975), *vacated on other grounds by* 538 F.2d 991 (1976).  In *Samuel*, the plaintiff moved to

disqualify the judge based on statements that the judge made at a bench-bar conference and the

judge's decisions in an unrelated case.  *Id.*  Deciding that recusal was not appropriate under such

circumstances, the court found that "[i]f [the above] distinction did not apply, a judge could neither

write books nor articles, nor could he speak on legal subjects.  Indeed, he could not write opinions,

since such a contention . . . would then disqualify him from hearing subsequent cases involving the

same points of law."  *Id.*  The *Samuel* court held that "[u]nless it has been the intention of Congress

that only ciphers be appointed to the federal bench, . . . the expression of opinion on legal matters

is certainly permitted."  *Id.*

---

[11] The undersigned judge specifically declined to speak or answer questions about cases pending before him:
>    Also, this morning Berry Spears and Debbie Langehennig mentioned the *Campbell* and *Hight* opinions.  Judge Isgur wrote *Campbell*.  It went up to the Fifth Circuit.  There's a motion for rehearing.  I wrote *Hight*.  It hasn't been appealed because there's a motion for rehearing in my court, so if you have questions about those cases, Berry and Debbie were suggesting you write down questions for the judge's panel tomorrow.
>    I'm not going to address them.  I think it would be inappropriate for me to address anything relating to *Hight* because it's still before me.  *Campbell* is not a done deal yet either at the Fifth Circuit apparently -- or at least a motion for rehearing has been filed, so I'm not going to comment on that either.  Maybe some of the other judges will, but I think it would be inappropriate.

22

The Court agrees with this logic and with the holdings in *McBeth* and *Metropolitan Opera*. At the Dallas Seminar, the undersigned judge explained the reasoning behind certain recent opinions issued by bankruptcy judges of the Southern District of Texas and the Eastern District of Louisiana interpreting Bankruptcy Rule 2016. The undersigned judge addressed recurring legal arguments asserted by the creditors in those cases and the reasons why those arguments failed. Indeed, he merely restated the reasoning from this Court's opinion in *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 303-05 (Bankr. S.D. Tex. 2007). That, in some instances, the undersigned judge made pointed comments about the weakness of certain legal arguments advanced in support of the notion that fees and charges need not be disclosed does not rise to the level of bias against Wells Fargo or creditors in general. *See Planned Parenthood of Se. Pa. v. Casey*, 812 F. Supp. 541, 545 (E.D. Pa. 1993) ("[T]he impartiality of a judge should not be questioned simply because he or she employs strong language in expressing [a legal] opinion.").

That the undersigned judge, at the Dallas Seminar, expressed frustration with some creditors—Wells Fargo *not* among them—that continue to ignore the disclosure requirements of Bankruptcy Rule 2016 despite this Court's prior opinions and rulings does not warrant recusal. Neither does the fact that the undersigned judge lamented the country's current financial condition and chastised those lax practices that may have contributed to the present state of the economy.

### b. Whether the Alleged Bias Stems from an Extrajudicial Source

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than that what the judge learned from his participation in the case." *Berger v. United States*, 255 U.S. 22, 31 (1921); *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). The Supreme Court, discussing § 455(a), has explained that

23

> opinions formed by the judge on the basis of facts introduced or events occurring in
> the courts of the current proceedings, or of prior proceedings, do not constitute a
> basis for a bias or partiality motion unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible.   Thus, judicial remarks
> during the course of a trial that are critical or disapproving of, or even hostile to,
> counsel, the parties, or their cases, ordinarily do not support a bias or partiality
> challenge.   They may do so if they reveal an opinion that derives from an
> extrajudicial source; and they will do so if they reveal such a high degree of
> favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555.  In sum, a judge may be biased when there is a danger that his decisions in

a particular suit will be based on information obtained outside the judicial context.[12]

Here, the undersigned judge's statements and conclusions were not informed by any

extrajudicial source.  Rather, his commentary on the weakness of certain arguments for a limited

application of Bankruptcy Rule 2016 was informed by the language of the rule and recent case law.

The undersigned judge prefaced his presentation by referring the audience to the written materials

prepared by Judge Isgur from which the presentation derived.   Indeed, the undersigned judge

introduced the presentation in the following manner:

> Judge Isgur had given you four cases in the booklet.  He had given you his case of
> *Padilla*.  He had given you my case of *Sanchez*.  He had given you Judge Magner's
> case out of Louisiana of *Jones*, and then the district judge's opinion which affirmed
> in part and  reversed in part -- and it was District Judge Helen Barrigan.
>     I'm also going to cite you a couple of other cases.  I have one literally hot off
> the press.  My fingers are burning.  Judge Isgur faxed it to me today.  It went on the
> docket today -- is *Rodriguez v. Countrywide Home Loans, Inc. -- Rodriguez v.*
> *Countrywide Home Loans, Inc.*, Adversary 08-01004.  And it certainly gets into
> portions of today's topic.

The undersigned judge began the substantive portion of the discussion by saying that "[t]he

---

[12] This is the reason most § 455 inquiries focus not on what a judge *said* outside the courtroom, but on what the judge *learned* outside the courtroom that may form the basis for his or her rulings.  Indeed, most of the § 455 cases involving a judge's attendance at a CLE or seminar focus not on what he presented there, but on what he heard from other presenters. *See generally, e.g., In re Aguinda*, 241 F.3d 194 (2d Cir. 2001) (denying motion to recuse district judge because he attended a seminar that was partially funded by a litigant at which unbalanced views were expressed).

creditors in the cases that Judge Isgur cited and in other hearings that I've held make the following

arguments." He then proceeded to address each legal argument in turn and explained why each

argument failed in those cases. Indeed, when addressing the argument that the bankruptcy court

lacks post-confirmation jurisdiction to enforce Rule 2016, the undersigned judge specifically referred

the audience to *Rodriguez v. Countrywide Home Loans, Inc.* and suggested an alternative argument

that may be more palatable to bankruptcy courts:

> Judge Isgur in this case I just cited to you, *Rodriguez v. Countrywide*, does a very fine
> job of reviewing subject matter jurisdiction. And he reviews subject matter
> jurisdiction in -- over plan administration, subject matter jurisdiction over closed
> cases -- and does a very good job of showing how the Fifth Circuit has held that a
> bankruptcy court has subject matter jurisdiction postclosure to protect the rights the
> debtors have under the Bankruptcy Code.
>     And so the notion that bankruptcy courts don't have jurisdiction to deal with
> creditors who don't comply with 2016 will not hold water, at least not in my court
> and not in Judge Isgur's court and I don't think it's going to hold water at the Fifth
> Circuit. You may prevail if you're a creditor on some other theory, for example, that
> 2016 doesn't apply to secured creditors, but I don't think you're going to hold -- I
> don't think you're going to find that the Fifth Circuit is going to say the bankruptcy
> courts don't have jurisdiction to enforce their own confirmation orders.

If a judge's own cases and those of his colleagues constitute "extrajudicial sources" that may

not inform a judge's decisions in subsequent cases, a judge would not be permitted to rely on

precedent. That the undersigned judge's statements at the Dallas Seminar occurred in a non-judicial

context does not suggest that his decisions in the present case will be tainted by extrajudicial

information. Rather, the undersigned judge's statements suggest just the opposite; that his decisions

in future cases will be informed by the following precedent: *Padilla*, 379 B.R. 643; *Sanchez*, 372

B.R. 289; *Jones*, 366 B.R. 584; *Jones*, 2008 WL 2635369; and *Rodriguez*, 2008 WL 4371669.

Because the Dallas Seminar presentation was based on case law, no reasonable person would

perceive that the undersigned judge's decisions in this particular suit will be tainted by an

extrajudicial source.  Therefore, disqualification is not appropriate in this adversary proceeding.

Indeed, to hold otherwise would pave the way for mass disqualifications of judges based on their

reliance on precedent.

To the extent that the undersigned judge referenced the front pages of various national

newspapers, there is nothing to suggest that those newspapers may form the basis for future rulings.

Indeed, the newspaper headlines were cited to make a larger point that the disregard for Bankruptcy

Rule 2016 in the above-cited cases may be part of a larger problem—the general disregard for rules

and regulations that contributed to the country's recent economic downturn:

> So I think it's a culture that -- that is across the board.  How can -- how can governmental instrumentalities like Freddie Mac and Fannie Mae be belly up?  It can only be because of lack of diligence and arrogance and hubris and not paying attention to detail.  I hope that the lawyers for these creditor clients will encourage their clients to -- to pay them for coming to court prepared and having paid attention to detail.  Most of the creditors' lawyers who appear in my court are doing that, and I hope that's because since I've been on the bench, I've been trying to get the message out that I want you to come prepared and I want you to jump through the hoops that the rules require you to do so.
> And the notion that you don't have to comply because for whatever reason your client, as one creditors' attorney said to this judge in Ohio: "Judge, you just don't understand how the system works."  That's what I mean by arrogance and hubris. We've got to go back to the basics.
> When I was a lender, I was taught the three C's.  You look at collateral.  You look at cash flow.  You look at character, and you don't make the loan unless all three are satisfied.  That ain't what's been going on now, is it?  These trusts that hold all these mortgages, they're not looking at that.  They just want their interest income, and then they pass it on to the second assignee and the third assignee and the fourth assignee.  And then when it lands up in bankruptcy court, I get proofs of claims by the sixth assignee who can't even give me a loan history for the entire loan because they can't get it from the fifth assignee who can't get it from the fourth assignee who can't get it from the third assignee and so forth down the line.  That ain't going to cut it with me.
> I'm policing my docket.  You're going to get more opinions, at least from me, and I assume the true -- same will be true for at least Judge Isgur and Judge Magner. We want to see I's dotted and T's crossed, and if they're not, then as I've said, 105 sanctions will be -- will be used.

> I hate to end on that kind of note, but given where we are with a lot of the institutions that I just cited, I don't know how else to express my frustration with some -- not all, some of the mortgage lenders in my court. I wish to emphasize that I -- I think highly of most, virtually all, of the attorneys who appear in my court these days, so I don't want you to leave this seminar thinking that I am upset with you, but do please convey to your clients that I feel very strongly that the rules and the statutes need to be complied with.

Taken in context of the presentation at large, which focused on the importance of disclosing post-petition fees under Bankruptcy Rule 2016, a reasonable listener would perceive these comments as a call for lenders to pay more attention to detail and to focus on adhering to the Bankruptcy Code and Rules.  Notably, Wells Fargo is not among the lending institutions referenced.

Indeed, the Supreme Court explained that "[d]isinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Liteky*, 540 U.S. at 551 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)).  The undersigned judge's distaste for the practices of some creditors that have previously appeared in this Court is not sufficient grounds for recusal in subsequent cases. Bias or partiality that provides the basis for recusal under § 455(a) "does not refer to all favoritism, but only to such as is, for some reason wrongful or inappropriate." *Id.* at 552.  For example, "[t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." *Id.* at 550-51.  Thus, Wells Fargo's argument that the undersigned judge should be recused because he has been soured by the conduct of other creditors in his court is legally unavailing.  The undersigned judge's

27

perceptions and opinions derived from his experience on the bench are not grounds for recusal.

This Court should not review portions of the Dallas CLE presentation piecemeal and in isolation. Rather, the Court is required to determine whether such statements, when viewed in the context of the speech as a whole, displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555; *see also, e.g.*, *LoCascio v. United States*, 473 F.3d 493, 496 (2d Cir. 2007) (finding that a judge's comments, when read in context, "revealed neither 'an opinion that derives from an extrajudicial source' nor 'such a high degree of favoritism or antagonism as to make fair judgment impossible'").   Here, the transcript shows that the undersigned judge's speech, when viewed as a whole, does not display "such a high degree of favoritism or antagonism" against Wells Fargo "as to make fair judgment impossible" in the adversary proceeding at bar.  Indeed, when concluding his analysis of common arguments made by creditors under Bankruptcy Rule 2016, the undersigned judge made the following comments, which reflects a desire that both creditors and debtors comply with the law:

> So those are the arguments that have been put before me.  If you've read my *Sanchez* case, I believe firmly that lenders in Chapter 13 have to comply with Rule 2016.  Aside from the arguments that have just been articulated, as I said in *Sanchez*, you need to disclose, disclose, disclose.  That is the spirit of the Bankruptcy Code for both debtors and creditors.  I have no more sympathy for a debtor who doesn't disclose in his or her schedules than I have for a creditor who doesn't disclose and goes forward and charges debtors without getting their fees and expenses approved.
> The twin pillars of bankruptcy are discharge to the debtor and payment of claims.  And it's payment of all claims, not just the claim of the secured creditor who happens to hold a lien on the principal residence.  I certainly want that secured creditor, that home lender, to get paid its principal, its interest and its reasonable fees and expenses as long as they do it by following Rule 2016.

The Court concludes that a reasonable observer would have perceived the Dallas Seminar presentation as a review of recent case law and a cautionary directive that creditors should make the

requisite disclosures under Bankruptcy Rule 2016 if they wish to have their post-petition fees and expenses paid from the bankruptcy estate.

Because these comments do not suggest that the undersigned judge will rely on extrajudicial sources for his rulings in this case, and because they do not display "such a high degree of favoritism or antagonism as to make fair judgment impossible," the undersigned judge is bound not to recuse himself. *Liteky*, 510 U.S. at 555.

### 2. The Undersigned Judge's Participation in the LSU Seminar Presentation

With respect to Wells Fargo's argument that the undersigned judge should be disqualified based on the PowerPoint presentation made at the LSU Seminar on October 9 and 10, 2008, the Court notes the following:

First, the PowerPoint slides prepared and presented solely by Bankruptcy Judge Magner cannot be attributed to the undersigned judge, who merely sat on a speakers' panel alongside her when she made her presentation.  Wells Fargo has not adduced clear and convincing evidence—nor could it—that connects the undersigned judge with Judge Magner's PowerPoint presentation. Indeed, although Judge Magner and the undersigned judge sat next to each other on the panel at the LSU Seminar, they spoke separately.  These circumstances cut against Wells Fargo's "apparent bias" argument under § 455(a) and underscores the weak link between the PowerPoint slides and the undersigned judge for the purposes of Wells Fargo's recusal Motion.

Second, even if the PowerPoint slides could be attributed to the undersigned judge—which they cannot—the information contained on the slides is entirely innocuous.  Wells Fargo points to language of one slide reading "[m]ost fees and charges are only available on default or late payment, so servicers benefit from defaults since their money is not at risk.  Servicers have incentive to

increase the amounts struggling debtors must pay through fees and escrow increases rather than waive these amounts or work through installment benefits." [Docket No. 73, Ex. C.] No reasonable observer would perceive this language as anything other than a statement of the financial incentives governing fee assessments. That there are financial disincentives to waiving fees, or to allowing fees to be paid in installments, is neither surprising nor is it a statement of bias.

Wells Fargo also points to a portion of another slide entitled "common examples," as evidence of the undersigned judge's alleged bias with respect to Wells Fargo in particular. That slide contains the following language: "Wells Fargo manages 7.7 million loans. If only one $15 fee were charged per year on each loan, its revenue would be $115 million." First, this statement merely conveys (using Wells Fargo as an example) that a large servicer could generate substantial revenues if it charged a $15.00 fee on each of its loans once per year. Second, to the extent that the slide references the number of loans held by Wells Fargo, this statement cannot be grounds for recusal because it references publicly available information. *See United States v. Douglas*, No. 2:07-CR-119, 2008 WL 1902087, at *4 (D. Vt. Apr. 25, 2008) ("Information learned from public records is generally considered excluded from the "extrajudicial source" doctrine."); *Cross v. Johnson*, 169 F. Supp. 2d 603, 618 (N.D. Tex. 2001) ("[D]efendant needs to establish that the trial judge was influenced by interests apart from the administration of justice and that the alleged bias or prejudice resulted in rulings based on . . . facts that were *not a matter of public record*." (emphasis added)).

Additionally, when viewed in the context of the presentation as a whole, these statements have neither a hidden meaning nor a nefarious connotation. Rather, they merely elucidate "How Servicers Make Money"—the subject of that portion of the presentation. [Docket No. 73, Ex. C.] The LSU Seminar presentation was designed to explain how mortgage loans work, how servicers

and lenders profit from them, and how they are handled in Chapter 13 cases. Even if some subliminal message could be extracted from the language of the slide—for example, that Wells Fargo could survive on fees alone—such a suggestion does not render the undersigned judge so biased against Wells Fargo that he should be disqualified from every case in which it is a party.

Applying the Supreme Court's standard for disqualification discussed above, the language of the PowerPoint slides cannot be grounds for recusal. When viewed within the context of the presentation as a whole, the LSU Seminar presentation would not lead a reasonable person to believe that the undersigned judge's mind has been poisoned by an extrajudicial source, nor does it "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

## V. CONCLUSION

Wells Fargo is required to show by clear and convincing evidence that a reasonable person would perceive, based on the two CLE presentations, that the undersigned judge's rulings in this adversary proceeding will be informed by an extrajudicial source or that the undersigned judge harbors such a high degree of favoritism or antagonism as to make fair judgment impossible. Wells Fargo has done neither.

The crux of Wells Fargo's Motion is that the Dallas and LSU Seminar presentations reflect that "this Court appears to have already ruled . . . [on] a number of legal theories." [Docket No. 73.] Wells Fargo is correct in this one respect. In *Sanchez*, this Court already ruled that Rule 2016 requires creditors to adequately disclose post-petition fees and costs. *In re Sanchez*, 372 B.R. at 304-05. It has already ruled that requiring disclosure is not a modification of a lender's contractual rights. *Id.* at 305-06. It has already ruled that debtors have a private right of action to seek enforcement of

31

Rule 2016's disclosure requirements. *Id.* at 309. And it has already ruled that the Court may exercise post-confirmation jurisdiction to enforce Rule 2016's disclosure requirements with respect to post-petition fees and costs. *Id.* at 301-02. However, that this Court has already ruled on these legal issues in *Sanchez* does not require the undersigned judge to recuse himself in this suit. Indeed, if a judge's prior rulings could disqualify him in subsequent suits, the gears of law would come to a screeching halt.

The Committee on Codes of Conduct of the Judicial Conference of the United States clearly desires that federal judges be free to convey their legal opinions at CLE presentations so that practitioners may benefit from their experience and perspective. *See* Code of Conduct for United States Judges Canon 4(A) (2000) ("A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice."); Code of Conduct for United States Judges Canon 4 cmt. (2000) ("As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice. To the extent that the judge's time permits, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law."). As such, the Code of Conduct for United States Judges expressly allows for, and encourages, federal judges to engage in "scholarly presentation[s] made for the purposes of legal education." Code of Conduct for United States Judges Canon 3(A)(6) (2000). At both the Dallas Seminar and the LSU Seminar, the undersigned judge did exactly that. To recuse himself in this suit would therefore be improper.

It is also incumbent on Wells Fargo to establish by clear and convincing evidence that the undersigned judge's impartiality may reasonably be questioned with respect to Wells Fargo in

32

particular. However, the undersigned judge never mentioned, or even eluded to, Wells Fargo during the Dallas Seminar presentation. At the LSU Seminar, although Wells Fargo was mentioned once in Judge Magner's PowerPoint presentation, the reference to Wells Fargo posited a hypothetical example to illustrate that large servicers have the capacity to generate substantial revenues from fees.[13] The Court knows of no case where a judge was required to recuse himself because he heard another speaker use a commonly known company in a hypothetical example.

For the forgoing reasons, the Motion should be denied. An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.


Signed on this 17th day of February, 2009.

Jeff Bohm
United States Bankruptcy Judge

---

[13] The exact language of Judge Magner's hypothetical on the PowerPoint slide is: "Wells Fargo manages 7.7 million loans. If only one $15 fee were charged per year on each loan, its revenue would be $115 million." *See* attached Copy of Slides Used by The Honorable Elizabeth Wall Magner in her PowerPoint Presentation.