

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/18/2009

| | | |
|---|---|---|
| IN RE: | § | Case No. 03-48263-H4-13 |
| | § | |
| JUDY WILBORN, | § | Chapter 13 |
| | § | |
| Debtor | § | |
| | § | |
| _____ | § | _____ |
| | § | |
| JUDY WILBORN, KARLTON | § | Adversary No. 07-3481 |
| FLOURNOY, MONICA FLOURNOY, | § | |
| and JUDITH MARTIN, on behalf of | § | |
| themselves and those similarly situated, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| WELLS FARGO BANK, N.A., f/k/a | § | |
| WELLS FARGO HOME MORTGAGE, | § | |
| INC., | § | |
| | § | |
| Defendant | § | |

MEMORANDUM OPINION ON WELLS FARGO HOME MORTGAGE'S
MOTION TO DISMISS ADVERSARY PROCEEDING FOR LACK OF SUBJECT
MATTER JURISDICTION
[Docket No. 23][1]

## I. INTRODUCTION

Judy Wilborn, the Debtor in this Chapter 13 case, along with Karlton Flournoy, Monica

Flournoy, and Judith Martin (collectively, the Plaintiffs or the Debtors) initiated this adversary

proceeding complaining that Wells Fargo Home Mortgage, Inc. (Wells Fargo), a division of Wells

Fargo Bank, N.A., improperly assessed post-petition fees and charges against them and a class of

---

[1] Any reference to "Docket No." is a reference to a document on the Adversary Docket for Adversary
Proceeding Number 07-3481 and should not be mistaken for a reference to the docket in the Plaintiffs' respective
Chapter 13 cases.

other similarly situated debtors.  The Plaintiffs seek the following relief: (1) a declaratory judgment

that Wells Fargo's actions violate 11 U.S.C. § 506(b) and Federal Rule of Bankruptcy Procedure

2016 (Bankruptcy Rule 2016); (2) an order permanently enjoining Wells Fargo from assessing such

fees in the future; and (3) disgorgement of any such fees that Wells Fargo has already collected.

Wells Fargo argues that this Court lacks subject matter jurisdiction to adjudicate the Plaintiffs' claims

and has moved to dismiss this adversary proceeding pursuant to Federal Rule of Civil Procedure

12(b)(1), as made applicable through Federal Rule of Bankruptcy Procedure 7012(b)(1).  For the

reasons set forth below, the Court concludes that it does indeed have subject matter jurisdiction to

adjudicate this dispute and that Wells Fargo's motion to dismiss should be denied.

## II. FINDINGS OF FACT

1.      On November 16, 2007, the Plaintiffs, on behalf of themselves and others similarly situated,

         filed a class action lawsuit against Wells Fargo, initiating this adversary proceeding.

2.      In the Plaintiffs' Complaint - Class Action (the Complaint), the Plaintiffs allege that Wells

         Fargo charged and collected, or attempted to collect, attorneys' fees and costs in the course

         of Plaintiffs' respective Chapter 13 bankruptcy cases without court approval and therefore

         disregarded the requirements of 11 U.S.C. § 506(b) and Bankruptcy Rule 2016.[2]  [Docket

         No. 1, ¶ 2.]

---

[2] 11 U.S.C § 506(b) provides that "[t]o the extent that an allowed secured claim is secured by property the
value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there
shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided
for under the agreement or State statute under which such claim arose."

        Bankruptcy Rule 2016 provides, *inter alia*, that "[a]n entity seeking interim or final compensation for services,
or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of
(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."  The requirements
of Bankruptcy Rule 2016 "shall apply to an application for compensation for services rendered by an attorney or an
accountant even though the application is filed by a *creditor* or other entity."  Fed. R. Bankr. P. 2016(a) (emphasis
added).

3.      Plaintiffs seek to represent a similarly situated class defined as:

> All individuals who filed for bankruptcy under chapter 13 in the Southern District Of Texas and owed Wells Fargo, as servicer or holder, on a mortgage debt secured by real property, and upon whom Wells Fargo charged or assessed professional fees and costs during the pendency of the bankruptcy proceeding which were never disclosed to the bankruptcy court, the debtor or other parties-in-interest nor approved by the court by written order entered in the particular bankruptcy case.

4.      In the Complaint, Plaintiffs seek the following relief:

a.      A declaration that undisclosed fees and costs are *per se* unreasonable, awarding Plaintiffs and class members equitable disgorgement of any unreasonable fees and costs actually collected;

b.      Awarding Plaintiffs and class members a permanent injunction which enjoins Wells Fargo from charging and/or assessing individual mortgage accounts for professional fees and/or costs which are incurred or which accrue during the time a bankruptcy case is pending without first seeking approval from the Bankruptcy Court;

c.      Awarding Plaintiffs and class members pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, disbursement and accounting fees, class costs and other costs of litigation;

d.      Sanctions for Wells Fargo's intentional disregard of the Bankruptcy Code and Rules and for its pattern and practice of violating the Bankruptcy Code and Rules for self-gain; and

e.      Such other relief, at law or in equity, to which the Plaintiffs and class members may show themselves justly entitled.

5.      On April 15, 2008, Wells Fargo filed Wells Fargo Home Mortgage's Motion to Dismiss

3

Adversary Proceeding for Lack of Subject Matter Jurisdiction (the Motion), [Docket No. 23],

and a brief in support thereof. [Docket No. 24.]

6.  On May 7, 2008, the Plaintiffs filed a response opposing the Motion.  [Docket No. 27.]

7.  On May 38, 2008, Wells Fargo filed a reply to the Plaintiffs' response to the Motion.
[Docket No. 37.]

### III. CONCLUSIONS OF LAW

**A.  Standard for Ruling on a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)**

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R.

Civ. P. 12(b)(1), the Court may consider "(1) the complaint alone, (2) the complaint supplemented

by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts

plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*,

241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659

(5th Cir. 1996)). The party asserting jurisdiction bears the burden of proof.  *Ramming v. United

States*, 281 F.3d 158, 161 (5th Cir. 2001).  Additionally, when deciding whether to grant a 12(b)(1)

motion, the Court "must accept all factual allegations in the plaintiff's complaint as true." *Id.* (citing

*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.1981)).

**B.  Subject Matter Jurisdiction Under 28 U.S.C. § 1334(b)**

Wells Fargo asserts that this adversary proceeding should be dismissed because this Court

lacks subject matter jurisdiction over the Plaintiffs' claims and the claims of the purported class

members.  Specifically, Wells Fargo argues that this Court lacks subject matter jurisdiction for any

one of the following reasons: (1) the Plaintiffs' claims and those of the purported class members have

no effect on their respective bankruptcy estates because the claims concern homestead property that

4

is exempt; (2) the claims of the purported class members do not impact the named Plaintiffs' individual bankruptcy estates; (3) the Plaintiffs' claims are not the proper subject of an adversary proceeding because 11 U.S.C. § 506(b) and Bankruptcy Rule 2016 do not provide a private right of action; (4) 11 U.S.C. § 506(b) and Bankruptcy Rule 2016 do not apply with respect to the Plaintiffs and purported class members whose plans have been confirmed; and (5) the Complaint is essentially a claim for breach of contract which may not be adjudicated by a bankruptcy court.

28 U.S.C. § 1334 grants the federal district courts jurisdiction over bankruptcy matters.  The district courts, pursuant to 28 U.S.C. § 157(a), "may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for that district."  Pursuant to this authority, the United States District Court for the Southern District of Texas has issued a general order of reference, automatically referring bankruptcy cases to the bankruptcy judges for this District. *In re Referrals to Bankruptcy Judges*, General Order 2005-6 (S.D. Tex. Mar. 10, 2005).  Therefore, this Court's jurisdiction over this adversary proceeding is confined to the scope of the District Court's jurisdiction over bankruptcy cases under § 1334.

28 U.S.C. § 1334(b) vests the district courts with subject matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11."  Because Congress employed conjunctive language in this statute, the Fifth Circuit has determined that § 1334(b) provides the district courts (and, by extension, the bankruptcy courts) with three distinct categories of jurisdiction over proceedings: (1) "arising under" the Bankruptcy Code, (2) "arising in" bankruptcy cases, or (3) "related to" bankruptcy cases. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  The Fifth Circuit has also articulated the differences between each of § 1334(b)'s three

jurisdictional categories: Proceedings "arise under" the Bankruptcy Code where they "invoke a substantive right provided by title 11." *Id.* at 97. Proceedings "arise in" bankruptcy cases where they "could only arise in the context of a bankruptcy case." *Id.* And proceedings are "related to" bankruptcy cases where "the outcome of [the] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Id.* at 93 (emphasis in original).

Because § 1334(b) contains disjunctive language, and because the third category of jurisdiction is the broadest, the Fifth Circuit has determined that a matter need only be "related to" a bankruptcy case for a bankruptcy court to have jurisdiction pursuant to § 1334(b). *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995)). However, although "related to" jurisdiction is considered the broadest category of a bankruptcy court's jurisdiction, it is not the only category. A bankruptcy court also has jurisdiction over matters that "arise under" or "arise in cases under" title 11. These last two categories of bankruptcy court jurisdiction are referred to as the court's "core jurisdiction" because they encompass matters that constitute "core proceedings" under 28 U.S.C. § 157(b).[3] *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999).

Here, the Plaintiffs seek a declaratory judgment that Wells Fargo's alleged practice of

---

[3] A bankruptcy court's power to *hear* matters over which it has "core jurisdiction" pursuant to § 1334(b) is indistinct from its ability to *enter judgment* in "core proceedings" pursuant to 28 U.S.C. § 157(b) because both sections employ the same language (i.e. both sections apply to matters "arising under" and "arising in cases under" title 11). *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999).

There *is*, however, a difference between a bankruptcy court's "related to" jurisdiction and its core jurisdiction. *See U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 304 (5th Cir. 2002) ("[I]f a matter within the broad scope of § 1334(b) satisfies the more precise notion of a core proceeding, § 157 authorizes the bankruptcy court to decide the matter and enter a final judgment."). A bankruptcy court has the power to *enter final judgment* in actions "arising under" the Bankruptcy Code or "arising in" bankruptcy cases, but may only issue proposed findings and conclusions to the district court in actions that are merely "related to" bankruptcy cases. *Compare* 28 U.S.C. § 1334(b) *with* 28 U.S.C. § 157(b)(1).

assessing and charging post-petition fees in their respective bankruptcy cases and those of the purported class members violates § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016. All other relief sought by the Plaintiffs stems from such a finding.[4] Based on the jurisdictional distinctions in § 1334(b) discussed above, this Court concludes that it has core jurisdiction to hear and render final judgment in this adversary proceeding because the Plaintiffs' claims (1) "arise under" the Bankruptcy Code, or (2) "arise in" each of their respective Chapter 13 cases.

1.    **This Court has core jurisdiction to fully adjudicate this adversary proceeding.**

28 U.S.C. § 1334(b) grants the federal district courts (and, by extension, the bankruptcy courts) jurisdiction over proceedings "arising under" the Bankruptcy Code or "arising in" bankruptcy cases. 28 U.S.C. § 157(b) permits the bankruptcy courts to fully adjudicate such proceedings upon reference from the district court. Hence, § 1334(b)'s provision for "arising under" and "arising in" jurisdiction has come to be known as a bankruptcy court's "core jurisdiction." The Fifth Circuit has provided the following definition of core jurisdiction:

> If the proceeding involves *a right created by the federal bankruptcy law*, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is *one that would arise only in bankruptcy*, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt.

*In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (emphasis added). The Fifth Circuit reiterated this principle in *In re Stonebridge Technologies, Inc.*, where it determined that claims which are "dependant upon the interpretation of rights created in bankruptcy" fall within the bankruptcy court's

---

[4] The Plaintiffs have also sought to enjoin Wells Fargo from continuing to assess and collect post-petition fees in violation of § 506(b) and Bankruptcy Rule 2016 and request that Wells Fargo be ordered to disgorge fees and costs that were so collected from the Plaintiffs and the purported class members. Such relief is contingent upon whether Wells Fargo has actually violated the Bankruptcy Code or Rules. Therefore, the key inquiry (as it relates to Wells Fargo's 12(b)(1) Motion) is whether this Court has subject matter jurisdiction to render a declaratory judgment that a party has violated the Bankruptcy Code or the Bankruptcy Rules.

core jurisdiction. *EOP-Colonnade of Dallas L.P. v. Faulkner (In re Stonebridge Techs., Inc.)*, 430

F.3d 260, 267 (5th Cir. 2005).

Thus, the question upon which Wells Fargo's Motion rises or falls is whether the Plaintiffs'

claims (1) involve rights created by federal bankruptcy law, or (2) could arise only in bankruptcy.

If the answer to either question is in the affirmative, then this Court has core subject matter

jurisdiction over the Plaintiffs' claims pursuant to § 1334(b) and the District Court's standing order

of reference.

      a.     **This Court has "arising under" jurisdiction to adjudicate the Plaintiffs' claims, which involve rights created by § 506(b) of the Bankruptcy Code and by Bankruptcy Rule 2016.**

"Congress used the phrase 'arising under title 11' to describe those proceedings that involve

a cause of action created or determined by a statutory provision of title 11." *Wood*, 825 F.2d at 96.

Thus, a bankruptcy court has core "arising under" jurisdiction over proceedings that "invoke a

substantive right provided by [the Bankruptcy Code]." *In re Stonebridge Techs.*, 430 F.3d at 267;

*see also Bank United v. Manley*, 273 B.R. 229, 243 (N.D. Ala. 2001) ("The case law clearly holds

that a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy

court's 'arising under' or core jurisdiction.") (citing *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th

Cir. 2000)).

This adversary proceeding is a lawsuit to determine the Plaintiffs' and the class members'

rights under the Bankruptcy Code and the Bankruptcy Rules.  The Plaintiffs have sought a

declaratory judgment from this Court that Wells Fargo's conduct violates § 506(b) of the Bankruptcy

Code and Bankruptcy Rule 2016.  Two other bankruptcy courts addressing this issue have

determined that the bankruptcy courts have "arising under" jurisdiction to fully adjudicate a debtor's

claim arising under § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016. *See, e.g., Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 662 (Bankr. W.D.N.C. 2000) ("[Section] 506(b) of the Code and its procedural counterpart, Bankruptcy Rule 2016, create rights and duties that affect debtors and creditors alike. Therefore, the Plaintiffs' complaint invokes substantive rights created by the Bankruptcy Code and falls within the Court's 'arising under' jurisdiction."); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 451-52 (Bankr. S.D. Tex. 2008) (concluding that the court had "arising under" jurisdiction to adjudicate a class action brought by Chapter 13 debtors claiming that their mortgage lender violated Bankruptcy Rule 2016 and their confirmed plans). This Court finds the reasoning in *Tate* and *Rodriguez* to be correct, and accordingly, concludes that the Plaintiffs' claims to enforce § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016 arise under the Bankruptcy Code.

> **b.      This Court has "arising in" jurisdiction because the Plaintiffs' claims and those of the purported class members could not exist outside of bankruptcy.**

A bankruptcy court also has core "arising in" jurisdiction to adjudicate proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood*, 825 F.2d at 97. In other words, a bankruptcy court has "arising in" jurisdiction to "hear administrative matters that arise *only* in bankruptcy cases." *Id.* (emphasis in original).

In *Tate*, a class of debtors brought an adversary proceeding similar to the one brought by the Plaintiffs in the suit at bar, alleging that a creditor collected fees in violation of § 506(b) and Bankruptcy Rule 2016. *Tate*, 253 B.R. at 658-60. The Bankruptcy Court for the Western District of North Carolina determined that it had "arising in" jurisdiction to hear the dispute "[b]ecause the

claims are based on alleged violations of procedural requirements unique to bankruptcy" and "would have no existence outside of these bankruptcy cases." *Id.* at 662.  This Court agrees with this reasoning.

Section 506(b) provides that to the extent the value of a secured creditor's collateral exceeds the secured creditor's allowed claim after the trustee collects any fees for preserving the collateral, that secured creditor may collect "reasonable" fees provided under its contract.  11 U.S.C. § 506(b). Bankruptcy Rule 2016 requires that an entity—including any creditor—seeking "reimbursement of necessary expenses from the estate" file a sufficiently detailed application with the bankruptcy court.[5] Fed. R. Bankr. P. 2016(a).  This Court is not aware of any non-bankruptcy law or statute that requires lenders to file fee applications that contain the sort of detailed information required by Bankruptcy Rule 2016 with a court before they may be collected.  Neither is this Court aware of any non-bankruptcy law that specifically limits holders of allowed secured claims to fees and interest not to exceed the value of the collateral securing their loan.[6]  These are *bankruptcy-specific* requirements.

---

[5] Specifically, Bankruptcy Rule 2016(a) requires that entities seeking "reimbursement of necessary expenses from the estate" file an application containing the following detailed information: "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Additionally, a Bankruptcy Rule 2016(a) application for compensation

> shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor.

Finally, this rule expressly states that "[t]he requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant *even though the application is filed by a creditor* or other entity." Fed. R. Bankr. P. 2016(a) (emphasis added).

[6] With respect to mortgage lenders secured solely by a Chapter 13 debtor's principal residence, 11 U.S.C. § 506(b) is curtailed by 11 U.S.C. § 1322(b)(2). Section 1322(b)(2) allows a Chapter 13 plan to modify the rights of secured creditors *other than those that have a security interest in the debtor's principal residence*. Thus, the contract rights of a lender secured by a Chapter 13 debtor's primary residence are controlling and cannot be modified by that debtor's Chapter 13 plan. *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329-30 (1993).

Indeed, § 506(b) contains numerous terms of art with specific definitions under 11 U.S.C. § 101 (e.g., "allowed" and "secured claim") and requires that "the trustee" be paid his or her costs for preserving the collateral before the secured creditor. The Plaintiffs' cause of action could simply not exist outside of bankruptcy.

Because § 506(b) and Bankruptcy Rule 2016's specific requirements "arise *only* in bankruptcy cases," the Plaintiffs' causes of action fall within this Court's "arising in" jurisdiction. *Wood*, 825 F.2d at 97 (emphasis in original).

## 2. That the Plaintiffs' claims touch upon exempt property does not preclude this Court from having jurisdiction over this adversary proceeding.

Wells Fargo's principal argument is based on the following syllogism: The property that forms the basis for the Plaintiffs' respective debts with Wells Fargo are the Plaintiffs' homesteads; these homesteads are exempt property under the Bankruptcy Code; a bankruptcy court lacks jurisdiction over all matters relating to exempt property; thus, this Court lacks jurisdiction over this adversary proceeding. The weakness in this chain of logic is two-fold: first, it presumes that "related to" jurisdiction is the only category of jurisdiction provided by § 1334(b)[7]; and second, it presumes that

---

However, "Bankruptcy Rule 2016(a) does not conflict with § 1322(b)(2). Section 1322(b)(2) is an anti-modification provision that prevents a plan from modifying Wells Fargo's . . . pre-petition contract rights. Rule 2016(a) does not modify any rights." *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 657 (Bankr. S.D. Tex. 2007). Bankruptcy Rule 2016(a) does not affect Wells Fargo's ability to charge and collect post-petition fees. Rather, Bankruptcy Rule 2016(a) "only requires Wells Fargo . . . to receive approval for [its] Reimbursable Expenses." *Id.* Notwithstanding § 1322(b)(2), Wells Fargo's ability to collect fees under its contracts is subject to the enforceability requirements of Texas state law. "Under Texas state law, mortgage contracts cannot provide for unreasonable fees. To the extent that the Court denied unauthorized or unreasonable fees, the court would be *enforcing* the contract rights, not modifying or ignoring those rights." *Id.* at 658 (emphasis in original).

[7] Wells Fargo's argument proceeds from the Fifth Circuit's discussion of "related to" jurisdiction, while largely disregarding the other two categories of jurisdiction provided by § 1334(b)—i.e. "arising under" and "arising in" jurisdiction. While this Court agrees that adversary proceedings not involving the debtor's bankruptcy rights or matters that could not arise outside of the bankruptcy context should have some conceivable effect on the debtor's bankruptcy estate to be heard by the bankruptcy court, the adversary proceeding at bar does not present such a situation. The adversary proceeding at bar was brought by the Debtors/Plaintiffs and directly implicates rights provided solely by the

every action that touches upon exempt property does not affect a debtor or his bankruptcy estate.

Wells Fargo's argument entirely disregards this Court's core jurisdiction over claims that "arise under" the Bankruptcy Code or "arise in" bankruptcy cases. The Fifth Circuit requires that an action brought in bankruptcy court have some conceivable impact of the debtor's estate in order to curtail the seemingly unlimited breadth of § 1334(b)'s provision for "related to" jurisdiction. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995). Such safeguards are not required in a suit where, as here, the Plaintiffs, in their capacity as Chapter 13 debtors, bring an adversary proceeding to enforce rights arising solely from the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Indeed, as discussed above, such a suit falls squarely within this Court's "arising under" or "arising in" jurisdiction.

### a. The cases cited by Wells Fargo involve failed attempts to invoke the bankruptcy court's "related to" jurisdiction and are therefore inapposite to the suit at bar, which involves this Court's core jurisdiction.

Blurring the distinction between § 1334(b)'s jurisdictional categories, Wells Fargo makes the sweeping assertion that "[m]ost courts . . . have concluded that bankruptcy courts lack subject matter jurisdiction over property that does not belong to a debtor's bankruptcy estate," citing the following cases as examples: *Torkelsen v. Maggio (In re The Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1181-82 (3d Cir. 1996); *Zale*, 62 F.3d at 756; *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990); *Tschirn v. Secor Bank*, 123 B.R. 215, 217-18 (E.D. La. 1991); and *Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d Cir. 1983). However, these cases involve "related to" jurisdiction and do not address "arising under" or "arising in" jurisdiction—i.e. they do not

---

Bankruptcy Code and the Bankruptcy Rules. In such a situation, there is no danger that exercising jurisdiction over this adversary proceeding would invite a myriad of unrelated parties to bring causes of action based on non-bankruptcy law in this forum.

involve claims to enforce debtor's bankruptcy rights or disputes that could arise only in bankruptcy cases. The Court will address each case in turn.

In *Torkelsen*, a third-party bailor initiated an adversary proceeding in order to sue the Chapter 11 trustee for losing a painting that the debtor held pursuant to a bailment contract. *Torkelsen*, 72 F.3d at 1174-75. The bailor in *Torkelsen* brought an action against the trustee in bankruptcy court for damages based on theories of wrongful possession, negligence, *res ipsa loquitur*, bailment, conversion, and breach of warranty. *Id.* at 1174. The Third Circuit, applying the Fifth Circuit's description of core jurisdiction from *Wood*, determined that the bailor's causes of action "certainly could exist outside of bankruptcy," and, for that reason, "neither invoke a substantive right provided by title 11, nor could . . . arise only in the context of a bankruptcy case." *Id.* at 1178 (internal marks and citations omitted). The Third Circuit also determined that the bailor's claims did not fall within the bankruptcy court's "related to" jurisdiction because they were "asserted only against the trustee in his individual capacity" and "would not impact upon the [debtor's] rights, liabilities, options, or freedom of action or the handling and administration of the bankrupt estate." *Id.* at 1182 (internal marks and citations omitted). Because the Third Circuit concluded that the bailor's causes of action were neither core nor "related to" proceedings, the Third Circuit held that the bankruptcy court did not have jurisdiction to hear the dispute.

*Torkelsen* is distinguishable from the present proceeding in three important respects. First, the claims asserted by the third-party bailor in *Torkelsen* derived solely from state law and not from bankruptcy law. Second, the bailor's action against the trustee arose out of the trustee's negligent handling of the debtor's exempt property rather than the debtor's rights and obligations under the bailment agreement. And third, the causes of action in *Torkelsen* were brought against the trustee

13

in his individual capacity such that the action had no bearing whatsoever on the debtor or the bankruptcy estate. Conversely, here, the Plaintiffs have asserted rights that exist *only* in bankruptcy law—i.e. their right to have post-petition fees disclosed and approved by this Court pursuant to 11 U.S.C. § 506(b) and Bankruptcy Rule 2016. Moreover, the Plaintiffs have not brought this action to recover damages for actions taken with respect to their exempt homesteads, but rather seek to enjoin Wells Fargo from charging undisclosed post-petition fees in violation of § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016. That such fees relate to the Plaintiffs' respective mortgage contracts with Wells Fargo does not change or somehow vitiate the fact that the Plaintiffs' claims arise solely under bankruptcy law.

In *Zale*, the second case cited by Wells Fargo, the Fifth Circuit determined that the bankruptcy court lacked jurisdiction to issue an injunction barring a third-party from bringing tort claims against the debtor's insurance company. *Zale*, 62 F.3d at 749-51. Because *Zale* involved a dispute between two non-debtors, the court noted that it could only have "related to" jurisdiction. *Id.* at 751. Specifically, the *Zale* court reasoned that a bankruptcy court's "related to" jurisdiction to adjudicate disputes between non-debtors should not be limitless and that "some nexus must exist between the related civil proceeding and the Title 11 case." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir. 1990)). Indeed, the Fifth Circuit's decision in *Zale* turned on the fact that the third party action in that case "[did] not affect the debtor." *Id.* at 752-53.

This adversary proceeding, unlike the lawsuit in *Zale*, implicates this Court's core, rather than non-core, jurisdiction. Wells Fargo cites *Zale* for the proposition that § 1334(b) provides for jurisdiction over an action only if (1) its outcome could alter the debtor's rights, liabilities, options, or freedom of action, *and* (2) it impacts the handling and administration of the bankruptcy estate.

14

[Docket No. 24, p. 23.] While this may be true with respect to a bankruptcy court's "related to" jurisdiction over disputes between non-debtors, it does not apply to a suit where, as here, the Plaintiffs, in their capacity as Chapter 13 debtors, bring an action arising under the Bankruptcy Code and the Bankruptcy Rules (i.e. § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016).   The Plaintiffs complain that Wells Fargo assessed, and in some cases collected, fees to their accounts during the pendency of their respective bankruptcy cases in violation of the Bankruptcy Code and the Bankruptcy Rules.   The *Zale* case therefore lends no support to Wells Fargo's position.

In *Gardner*, the third case relied upon by Wells Fargo, the debtor's former spouse brought an adversary proceeding to compel the Chapter 7 trustee to turn over property that was awarded to the former spouse in the divorce action. *Gardner*, 913 F.2d at 1517.   The property awarded to the former spouse was also subject to a tax lien, giving rise to a priority dispute between the United States government and the former spouse, which was filed as an adversary proceeding in the bankruptcy court. *Id.*   The Tenth Circuit determined that "neither [the debtor] nor the bankruptcy estate are affected by the dispute between [the former spouse] and the government" and that the bankruptcy court lacked subject matter jurisdiction to hear a dispute "between two creditors over property no longer a part of the bankruptcy estate." *Id.* at 1518.   The *Gardner* court also reasoned that because the dispute was between two non-debtor third parties, only the bankruptcy court's non-core, "related to" jurisdiction was implicated. *Id.* at 1517-18. The Tenth Circuit ultimately held that a "bankruptcy court lacks ['related to'] jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy." *Id.* at 1518 (citing *In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d Cir. 1979)). With respect to a bankruptcy court's core jurisdiction, the

15

Tenth Circuit explained that "[a]ctions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." *Id.* (citing *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)).

*Gardner*, like *Zale*, involved two non-debtors attempting to adjudicate a dispute unrelated to the debtor or his property in bankruptcy court. Because the suit in *Gardner* did not involve the debtor or the debtor's bankruptcy rights, the bankruptcy court could only exercise its "related to" jurisdiction if these third-party disputes affected property of the debtor's bankruptcy estate. In the suit at bar, however, the individual Plaintiffs and the proposed class members have brought the class action as debtors seeking to assert their rights under the Bankruptcy Code and the Bankruptcy Rules. *Gardner* affirmatively supports the view that this Court has core jurisdiction over actions—like the Plaintiffs'—"which depend on the bankruptcy laws for their existence." *Id.*

In *Tschirn*, the fourth case relied upon by Wells Fargo, the United States District Court for the Eastern District of Louisiana held that the estate's lender liability claims brought by the trustee were properly subject to the bankruptcy court's "related to" jurisdiction, but determined that once the trustee abandoned the claims, the bankruptcy court's jurisdiction lapsed.[8] *Tschirn*, 123 B.R. at 217-18. The *Tschirn* court found that the debtor's claims, although properly removed to the

---

[8] *Tschirn* should not be taken to suggest that the Chapter 13 trustee is the only party with standing to bring a lawsuit on behalf of the bankruptcy estate. Unlike a Chapter 7 debtor, a Chapter 13 debtor has concurrent standing to sue along with the Chapter 13 trustee. *See Cable v. Ivy Tech State College*, 200 F.3d 467, 472-74 (7th Cir. 1999) (holding that the Chapter 13 debtor and the trustee have concurrent standing to bring a claim on behalf of the bankruptcy estate because it would be illogical "to grant the debtor possession of the chose in action yet prohibit him from pursuing it. . . ."); *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515-16 (2d Cir. 1998) (per curium) (finding that a Chapter 13 debtor has standing "to litigate causes of action that are not part of a case under title 11" in part because "in Chapter 13 proceedings (unlike Chapter 7 proceedings) the creditors' recovery is drawn from the debtor's earnings, not from the assets of the bankruptcy estate"); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1209 n.2 (3d Cir. 1992) ("Chapter 13 debtors are empowered to maintain suit even after a bankruptcy trustee has been appointed in their case: an essential feature of a [C]hapter 13 case is that the debtor retains possession of and may use all the property of his estate, including his prepetition causes of action, pending confirmation of his plan.").

bankruptcy court at the outset of the case, were no longer "related to" the debtor's bankruptcy case once the trustee abandoned them. *Id.*

Like the other cases cited by Wells Fargo, *Tschirn* only involves the bankruptcy court's "related to" jurisdiction; whereas, this adversary proceeding, as discussed above, falls squarely within this Court's core "arising under" or "arising in" jurisdiction under § 1334(b). Additionally, *Tschirn* involved a debtor's motion to remand a proceeding to state court because the matter involved claims which the trustee had abandoned. In this proceeding against Wells Fargo, however, the Plaintiffs are actively pursuing claims arising solely under § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016. This Court's jurisdiction to adjudicate claims that have been abandoned by the trustee on behalf of the estate is an entirely separate issue, which is not relevant to the suit at bar, where the Plaintiffs have not abandoned their claims.

The last case relied upon by Wells Fargo is *Turner*, 724 F.2d 338. In *Turner*, the debtor sought damages against her landlord for conversion of personal property in the debtor's leased premises. *Id.* at 339. The debtor had scheduled the cause of action against her landlord as exempt property. *Id.* While the Second Circuit acknowledged that Congress intended the bankruptcy courts' "related to" jurisdiction to be broad, it reasoned, pointing to Collier's, that:

> Situations will undoubtedly arise in which the controversy is so tangential to the title 11 case that a court will hold that the case neither arises in nor is related to the title 11 case. In such cases, the bankruptcy court may decide that the exiguous nature of the relationship between the proceeding and the bankruptcy case is such as to fall without the court's jurisdiction. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could conceivably have any effect upon the estate being administered.

*Id.* at 341 (quoting 1 Collier, Bankruptcy ff ¶ 3.01[1][e] (15th ed. 1983)). The Second Circuit found it significant that the debtor in *Turner* brought her action against the landlord in her own name

pursuant to § 522(d)—as opposed to in her capacity as a debtor-in-possession under § 1107(a)—and determined that "[t]here is no suggestion that the proceeds would be turned over to the trustee, or accounted for to him, and the judgment below orders [the landlord] to pay the damages directly to her." *Id.* Under these circumstances, the Second Circuit held that the debtor's action did not have "any significant connection with her bankruptcy case" and therefore that the bankruptcy court did not have "related to" jurisdiction. *Id.*

Like the other cases cited by Wells Fargo, *Turner* does not address a bankruptcy court's core jurisdiction. Rather, *Turner* deals solely with "related to" jurisdiction. *Turner* is distinguishable from the present adversary proceeding because, in *Turner*, the debtor's lawsuit itself was not property of the estate. Therefore, the proceeds from the lawsuit would not be available for distribution to creditors. Here, any equitable disgorgement of collected fees sought by the Plaintiffs would be returned to the Chapter 13 trustee for distribution to creditors.[9] Further, not only do the Plaintiffs

---

[9] For those Plaintiffs and purported class members who have not yet had their Chapter 13 plans confirmed, any equitable disgorgement of fees already collected by Wells Fargo that may be awarded in this lawsuit will be returned to their respective bankruptcy estates for distribution to creditors. This is so because any monies improperly collected by Wells Fargo during these Chapter 13 cases necessarily came from the earnings of each of the debtors—and such earnings constitute property of the bankruptcy estate. *See* 11 U.S.C. § 1306(a) (including in the Chapter 13 estate property acquired "after the commencement of the case but before the case is closed, dismissed, or converted" and "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted"). Additionally, for those Plaintiffs and purported class members whose Chapter 13 plans have already been confirmed, this Court may, pursuant to 11 U.S.C. § 1325(c), order that any post-confirmation income—i.e. any monies recovered in this lawsuit—be turned over to the Chapter 13 trustee for disbursement to creditors. For those purported class members whose Chapter 13 cases have been closed, the Court may, pursuant to 11 U.S.C. § 350(b), order that their respective cases be re-opened and that any funds recovered from this suit be turned over to the Chapter 13 trustee for distribution to holders of claims who have not been paid 100%. 11 U.S.C. § 350(b) ("A case may be reopened in the court in which the case was closed to administer assets, to accord relief to the debtor, or for other cause."); *see also Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991) ("The phrase "or other cause" as used in § 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown."); 4 Collier On Bankruptcy ¶ 524.02[2][c] at 524-18 ("A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2), (O) of title 28, and courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined."). Therefore, the relief requested by the Plaintiffs does affect their respective bankruptcy estates and those of the purported class members.

seek vindication of their bankruptcy, rather than state law, rights, they also seek injunctive relief to prevent Wells Fargo from engaging in future conduct that violates the Bankruptcy Code and the Bankruptcy Rules. Indeed, the very purpose of Bankruptcy Rule 2016 is to ensure that hidden fees—which could also be in unreasonable amounts—do not pile up against the debtor during the pendency of the bankruptcy case only to be collected after the case is closed. *See Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643, 658 (Bankr. S.D. Tex. 2007).

The cases cited by Wells Fargo, while helpful for gauging the outer limits of this Court's "related to" jurisdiction in lawsuits between non-debtors (or, in the case of *Turner*, individuals not acting in their capacity as debtors in possession), are inapposite to the suit at bar. All of these cases stand for the proposition that where an action does not involve the debtor or the debtor's bankruptcy rights, there must be some conceivable effect on the debtor's bankruptcy estate for the bankruptcy court to have "related to" jurisdiction. However, here, this proposition does not help in determining whether the Plaintiffs' complaint falls within this Court's core—"arising under" or "arising in"—jurisdiction. Indeed, three of the cases cited by Wells Fargo, *Torkelsen*, *Zale*, and *Gardner*, suggest in dictum that lawsuits concerning the debtor's bankruptcy rights may properly be adjudicated by the bankruptcy court. The cases cited by Wells Fargo do not involve lawsuits to enforce rights arising solely under the Bankruptcy Code or the Bankruptcy Rules, nor do they involve disputes that could only occur in bankruptcy cases. Because the adversary proceeding at bar concerns both, this suit is a core proceeding over which this Court has jurisdiction.

19

> **b.      That the Plaintiffs' claims incidentally touch upon exempt property does not, contrary to Wells Fargo's argument, affect this Court's core jurisdiction to hear disputes that "arise under" the Bankruptcy Code and Rules or "arise in" bankruptcy cases.**

Based on the above-cited cases concerning "related to" jurisdiction, Wells Fargo emphasizes that because the Plaintiffs' claims arise from loans secured by homesteads—which are exempt property—this Court lacks jurisdiction. This Court strongly disagrees.

The facts of this adversary proceeding are more akin to those in *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D. Tex. 2008); *Aiello v. Providian Fin. Corp. (In re Aiello)*, 231 B.R. 693 (Bankr. N.D. Ill. 1999), *aff'd*, 239 F.3d 876 (7th Cir. 2001);[10] and *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000).

In *Rodriguez*, Chapter 13 debtors brought an adversary proceeding on behalf of themselves and a similarly situated class of debtors asserting that their mortgage lender had improperly assessed post-petition charges against them. *Rodriguez*, 396 B.R. at 439-40. The Bankruptcy Court for the Southern District of Texas[11] held that it could properly exercise its "arising under" jurisdiction to adjudicate what amounted to claims for violations of the respective debtors' and class members' confirmed Chapter 13 plans. *Id.* at 450-51. In so holding, the *Rodriguez* court rejected the argument that the bankruptcy court's subject matter jurisdiction "is limited to matters that affect the bankruptcy estate's assets and liabilities." Specifically, the court refused to rely solely on "cases where the issue concerned something other than enforcement of a fundamental bankruptcy right or an order

---

[10] The *Aiello* court determined that it did have jurisdiction to hear the dispute but determined that class certification was not appropriate. On appeal, the Seventh Circuit affirmed the bankruptcy court's decision not to certify the class, while making no mention of subject matter jurisdiction.

[11] The *Rodriguez* adversary proceeding was presided over by the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas.

confirming a plan" because such cases deal "with untoward attempts to invoke bankruptcy jurisdiction to resolve non-core disputes that did not arise under Title 11." *Id.* at 453. Instead, the *Rodriguez* court determined that "[f]or the purposes of 'arising in' and 'arising under' subject matter jurisdiction, an adversary proceeding need not relate to only one bankruptcy case. Rather, the adversary proceeding may simultaneously be related to, or arise in or under, multiple bankruptcy cases and still fall well within § 1334's jurisdictional boundaries." *Id.* at 455. The bankruptcy court rejected the mortgage lender's argument—identical to Wells Fargo's argument in this case—that the court lacked jurisdiction because the Chapter 13 debtors' lawsuit concerned exempt homesteads. Here, as in *Rodriguez*, "it is the allegedly unlawful accounting and collection practices, not the homesteads, that are the basis of this suit." *Id.* at 450.

In *Aiello*, the debtor brought an adversary proceeding to recover damages on behalf of a class of debtors for a credit card company's alleged violation of the automatic stay imposed by 11 U.S.C. § 362 in each debtor's case. *Aiello*, 231 B.R. at 699. The credit card company argued that the bankruptcy court could not exercise core jurisdiction "to enforce the automatic stay on behalf of other class members when the outcome cannot possibly affect the distribution of property in this [d]ebtor's estate." *Id.* at 703. The Bankruptcy Court for the Northern District of Illinois rejected this argument, determining that it had core jurisdiction over the dispute because the debtor's complaint "invokes a substantive bankruptcy right which could only arise in the bankruptcy context." *Id.* at 704. The bankruptcy court further determined that "[t]he core nature of this complaint is not altered simply because it is brought in the form of a debtor class action." *Id.* The credit card company in *Aiello*, like Wells Fargo in this suit, relied exclusively on cases discussing "related to" jurisdiction. The *Aiello* court found such cases unhelpful where a class of debtors asserts rights created by the Bankruptcy

21

Code because, in such a suit, the bankruptcy court's core jurisdiction is implicated:

> By its very definition, "related-to" jurisdiction only applies in non-core matters as an alternative basis of jurisdiction. It assumes that the matter does not "arise under" the Bankruptcy Code or "arise in" the case at hand and therefore it requires some other nexus vis-a-vis the estate involved. *Such a nexus, however, is not required when the Court is interpreting fundamental provisions of the Bankruptcy Code as to all of the class members*. There is no basis for artificially limiting core jurisdiction in debtor class actions to "related-to" situations.

*Id.* at 705 (emphasis added).  Similarly, the Plaintiffs' claims in this adversary proceeding call for an interpretation of § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016, which, like § 362, are fundamental provisions of the Bankruptcy Code and the Bankruptcy Rules that give effect to the substantive Code provisions.

In *Noletto*, a class of Chapter 13 debtors brought an adversary proceeding seeking a declaratory judgment that certain creditors charged post-petition fees in violation of § 506(b) and the automatic stay provisions of § 362 of the Bankruptcy Code.  *Noletto*, 244 B.R. at 847.  The Bankruptcy Court for the Southern District of Alabama determined that "[t]hese class actions clearly fit within the plain language of the 'arising under' or 'arising in' jurisdictional categories" because "[a]ll of the debtors' claims will be determined from the statutory provisions of the Bankruptcy Code."  *Id.* at 849 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989)).  The bankruptcy court also declined to limit its inquiry to "related to" jurisdiction because to do so "ignore[s] the language 'arising under' or 'arising in' a case under title 11."  *Id.*

Like the bankruptcy courts in *Rodriguez*, *Aiello*, and *Noletto*, this Court refuses to confine its inquiry to whether it has "related to" jurisdiction over the Plaintiffs' claims.  In this adversary proceeding, the Plaintiffs, in their capacity as debtors in their respective Chapter 13 cases, have sought a declaratory judgment that Wells Fargo's alleged practice of assessing and charging

22

undisclosed fees violates § 506(b) of the Bankruptcy Code and its procedural counterpart, Bankruptcy Rule 2016. The Court concludes that such an action evokes this Court's core jurisdiction, as a proceeding "arising under" § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016, or "arising in" the respective bankruptcy cases of the Plaintiffs and the purported class members.

### 3.     This Court has jurisdiction to adjudicate the class claims.

The majority of bankruptcy courts have held that § 1334(b) provides for jurisdiction over claims brought by a class of debtors. *See, e.g., In re Wiley*, 224 B.R. 58 (Bankr. N.D. Ill. 1998); *In re Coggin*, 155 B.R. 934 (Bankr. E.D.N.C. 1993); *In re Whittaker*, 84 B.R. 934 (Bankr. E.D. Pa. 1988), *aff'd*, 92 B.R. 110 (E.D. Pa. 1988), *aff'd* 882 F.2d 791 (3d Cir. 1989). Indeed, some courts have determined that § 1334(b)'s jurisdictional grant is sufficiently broad to support a nationwide class of debtors. *See, e.g., Aiello*, 231 B.R. at 707; *Noletto*, 244 B.R. at 855-58.

Although this Court recognizes that the bankruptcy courts are currently split on the issue of whether § 1334(b) provides for subject matter jurisdiction over a nationwide class of debtor/plaintiffs, such an issue has not arisen in this suit. Here, the Plaintiffs' class definition is limited to "individuals who filed for bankruptcy under chapter 13 *in the Southern District Of Texas*." Because all of the purported class members are—or were at one time—Chapter 13 debtors solely within this District, this suit does not present the problems that typically accompany a nationwide class action.

### a.     Exercising jurisdiction in this matter will not transform this Court into a "general forum."

Wells Fargo raises concerns that exercising jurisdiction over the Plaintiffs' claims would transform this Court into a general forum. Specifically, Wells Fargo cites to language from *Cline v.*

*First Nationwide Mortgage Corp. (In re Cline)*, 282 B.R. 686, 694 (W.D. Wash. 2002), where the court cautioned that exercising jurisdiction over a nationwide class would turn bankruptcy courts into "forums available for the general resolution of disputes so long as the matter is brought pursuant to some provision of the Bankruptcy Code, regardless of whether there were a bankruptcy case pending in the district where the claim is filed." However, this suit is materially distinguishable from *Cline*.

As mentioned above, because the Plaintiffs in this adversary proceeding have only sought to certify a class of debtors who filed cases in this District, exercising jurisdiction over this lawsuit would not invite debtors from across the country to file class actions in this Court. "At the very least a bankruptcy court may exercise subject matter jurisdiction over the claims of debtors whose underlying cases were filed in that court's district . . . [a] contrary holding would effectively read Bankruptcy Rule 7023 ('Class Proceedings') out of the law entirely." *In re Tate*, 253 B.R. 653, 654 (Bankr. W.D.N.C. 2000). Therefore, this Court need not decide the issue of whether it has subject matter jurisdiction over a nationwide class. It is enough to say, for the purposes of this adversary proceeding, that § 1334(b) provides the District Court (and therefore this Court) with concurrent jurisdiction to hear the Plaintiffs' claims on behalf of purported class members in this District.

        **b.**    **That the bankruptcy cases of some of the purported class members have been closed does not affect this Court's subject matter jurisdiction to hear the dispute.**

Wells Fargo also asserts that this Court does not have subject matter jurisdiction over the claims of purported class members who have received a discharge, or whose cases have been closed, because this Court's jurisdiction over post-closure disputes is too "attenuated." [Docket No. 24, p. 33.] This argument fails for two reasons. First, this Court has subject matter jurisdiction post-closure to remedy violations of a debtor's bankruptcy rights that occurred before the bankruptcy case was

closed. Second, this Court has subject matter jurisdiction post-closure to enforce its own orders, including its orders confirming Chapter 13 plans.

The Fifth Circuit has determined that after a bankruptcy case is closed, subject matter jurisdiction remains in the bankruptcy court to ensure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated. *In re Bradley*, 989 F.2d 802, 804-05 (5th Cir. 1993) (holding that the bankruptcy court properly exercised subject matter jurisdiction to hear plaintiffs' post-discharge employment discrimination claims under 11 U.S.C. § 525); *see also Bank United*, 273 B.R. at 243 ("Congress has stated that in some instances jurisdiction continues after the estate is closed because the proceeding would still 'arise under' title 11."). Other bankruptcy courts have also concluded that "[t]he Bankruptcy Court will retain jurisdiction to hear matters in a case which has been closed when the party is claiming a specific right or remedy created by a substantive provision of the Bankruptcy Code." *Aiello*, 231 B.R. at 707; *In re Walker*, 198 B.R. 476, 482 (Bankr. E.D. Va. 1996); *In re Jandel*, 8 B.R. 855, 857 (Bankr. S.D. Ohio 1981). Indeed, the Honorable Marvin Isgur, United States Bankruptcy Judge for the Southern District of Texas, offered a particularly compelling explanation, reasoning that the "fresh start" purpose driving the Bankruptcy Code cannot be effectuated if bankruptcy rights altogether terminate upon closure of the case. *See Rodriguez*, 396 B.R. at 452-54 ("If a lender could wait until the conclusion of a bankruptcy case-and then impose disallowed charges, the debtor's fresh start would not be fresh at all."); *see also In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985) (noting that a primary objective of the Bankruptcy Code is "to give debtors a reasonable opportunity to make a fresh start"). This is particularly true with respect to pre-discharge fees which are assessed *prior to* closure of the case and then collected *after* the case is closed. If a creditor can simply tally up fees throughout the pendency of the bankruptcy

25

proceedings only to charge those fees once the case is closed, certain provisions of the Bankruptcy Code and the Bankruptcy Rules—such as § 506(b) and Bankruptcy Rule 2016—could easily be avoided or altogether disregarded.

Additionally, to the extent that Wells Fargo argues that this Court's jurisdiction over disputes involving closed cases is limited, the adversary proceeding at bar falls well within any such limitation.[12] The Fifth Circuit has explained that the bankruptcy courts retain jurisdiction post-closure to ensure compliance with its plan confirmation order. *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001) (holding that bankruptcy courts retain subject matter jurisdiction over a discharged debtor with respect to "matters pertaining to the implementation of the plan"). And it expressly held in *In re National Gypsum Co.* that "a declaratory judgment action seeking merely a declaration that collection of an asserted preconfirmation liability is barred by a bankruptcy court's confirmation of a debtor's reorganization plan . . . is a core proceeding arising under title 11." *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1064 (5th Cir. 1997).

---

[12] Though Wells Fargo does not expound on this point, it cites two Fifth Circuit cases in support of its proposition that this Court's jurisdiction post-closure is "attenuated": *In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002); and *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001). These cases are frequently cited for the proposition that a bankruptcy court's jurisdiction after a debtor's plan is confirmed is limited to matters pertaining to the implementation or execution of the plan. *In re U.S. Brass*, 301 F.3d at 304-05; *In re Craig's Stores*, 266 F.3d at 390. However, the Fifth Circuit subsequently explained that in those two cases, the bankruptcy court retained limited post-confirmation jurisdiction because: (1) the claims at issue "principally dealt with post-confirmation relations between the parties"; (2) "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization"; and (3) "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." *See In re Enron Corp. Sec.*, 535 F.3d 325, 335-36 (5th Cir. 2008) (citing *Craig's Stores*, 266 F.3d at 391). While this Court's post-confirmation or post-closure jurisdiction may be limited, to conclude that it is limited only to matters pertaining to implementation and execution of the plan would ignore other Fifth Circuit jurisprudence. *See, e.g., id.* (explaining that bankruptcy courts generally retain jurisdiction over pre-confirmation claims based on pre-confirmation activities even though the actual dispute is tried post-confirmation); *In re Bradley*, 989 F.2d at 804-05 (holding that the bankruptcy court properly exercised jurisdiction to hear plaintiffs' post-discharge claims arising under 11 U.S.C. § 525).

Wells Fargo's alleged violation of Bankruptcy Rule 2016—which must be taken as true—would also constitute a violation of this Court's confirmation orders in the cases of purported class members that have already received a discharge. This is so because the confirmed plans of the class members with closed cases incorporate their rights under their respective contracts with Wells Fargo, which allow for *reasonable* fees.[13] *Rodriguez*, 396 B.R. at 451; *In re Padilla*, 379 B.R. at 659-61. Therefore, "charging and collecting *unreasonable* amounts would violate the Court Order confirming the plan." *Id.* (citing *In re Padilla*, 379 B.R. at 659-61).

In sum, with respect to purported class members whose Chapter 13 cases have been closed, this Court has core jurisdiction to remedy violations of those class members' bankruptcy rights that occurred prior to discharge and to enforce its confirmation order in each class members' respective bankruptcy case.

## C.    Non-Jurisdictional Issues Raised by Wells Fargo in its 12(b)(1) Motion

Wells Fargo also argues a number of issues that are not entirely germane to the issue of whether this Court has subject matter jurisdiction over this adversary proceeding. First, Wells Fargo asserts that a debtor's action to enforce § 506(b) and Bankruptcy Rule 2016 can only be brought in the main bankruptcy case and is not a proper subject for an adversary proceeding. Second, Wells Fargo contends that Bankruptcy Rule 2016's fee disclosure requirements only apply to fees and expenses assessed and charged before the Chapter 13 plan is confirmed. Third, Wells Fargo argues that the Plaintiffs' claims alleging violations of § 506(b) of the Bankruptcy Code and Bankruptcy Rule

---

[13] For example, the promissory note signed by Karlton E. Flournoy, one of the named Plaintiffs, contains the following language: "if the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, *reasonable* attorneys' fees." [Docket No. 26, Ex. A.] (emphasis added).

2016 are, at bottom, state law breach of contract claims.

Because Wells Fargo has brought these issues in the context of its 12(b)(1) Motion, this Court will confine its analysis to how these issues might affect this Court's subject matter jurisdiction. For the reasons set forth below, the Court concludes that none of these issues relate to this Court's jurisdiction to hear and adjudicate the adversary proceeding at bar.

### 1.   An action to enforce 11 U.S.C. § 506(b) and Bankruptcy Rule 2016 may be brought in an adversary proceeding.

Wells Fargo asserts that the Plaintiffs' complaint is not a proper matter for an adversary proceeding. However, even if this were true—and it is not—this issue has no bearing on whether or not this Court has subject matter jurisdiction to hear a particular dispute. Wells Fargo appears to argue that although the Plaintiffs' complaint might properly constitute a contested matter, this Court lacks jurisdiction to hear the dispute in the context of an adversary proceeding. Courts have acknowledged, and Wells Fargo does not dispute, that a bankruptcy court may, on its own motion, take measures to enforce and remedy violations of § 506(b) and Bankruptcy Rule 2016. *Rodriguez* is particularly instructive on this point. In that case, the bankruptcy court dismissed, as a "red herring," the mortgage lender's argument that violations of Bankruptcy Rule 2016 did not confer a private right of action to seek enforcement of such provisions in an adversary proceeding:

> In this adversary proceeding, Plaintiffs do not ask the court to imply a private right of action from the Code provisions allegedly violated. Rather, Plaintiffs request relief arising from the Court's inherent civil contempt authority, and the Court's authority to issue orders necessary to effectuate the purposes of the Bankruptcy Code provided by § 105. The complaint is, at its heart, a complaint seeking relief under the court's contempt authority and § 105.

*Rodriguez*, 396 B.R. at 456-57.   Whether or not the Plaintiffs' claims should be brought in an adversary proceeding is irrelevant to the question of this Court's subject matter jurisdiction.

Even if the distinction between an adversary proceeding and a contested matter somehow affected this Court's subject matter jurisdiction, this Court has the power to convert a contested matter to an adversary proceeding on its own motion. *See, e.g.*, *Costa v. Marotta, Gund, Budd & Dzera, LLC*, 281 Fed. Appx. 5, 6 (1st Cir. 2008) (affirming both the bankruptcy court and the district court after "the bankruptcy court sua sponte converted the contested matter into an adversary proceeding"); *Johnson v. Stemple (In re Stemple)*, 361 B.R. 778, 784 (Bankr. E.D. Va. 2007) (converting, sua sponte, a party's motion to dismiss to a complaint and initiating an adversary proceeding as required by Fed. R. Bankr. P. 7001(5)). Here, however, the Court does not need to convert a contested matter to an adversary proceeding because, given the need for discovery and the equitable and injunctive relief requested, the Plaintiffs properly filed the Complaint as an adversary proceeding. Fed. R. Bankr. P. 7001(7) (providing that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding); *see also, e.g., In re Stratesec, Inc.*, 375 B.R. 1, 3 (Bankr. D.D.C. 2007) ("Federal Rule of Bankruptcy Procedure 7001(7) requires that a proceeding seeking an injunction be brought as an adversary proceeding."). Wells Fargo's suggestion that the Plaintiffs should have initiated a contested matter (i.e. filed a motion in the Plaintiffs' respective main cases), instead of an adversary proceeding, is nonsense; and its argument that this Court lacks jurisdiction to adjudicate this dispute in an adversary proceeding is sheer nonsense.

## 2.    Bankruptcy Rule 2016 applies post-confirmation.

Wells Fargo has argued that even if the Plaintiffs could bring a private cause of action under § 506(b), this section does not apply to fees and expenses that Wells Fargo charged after the debtor's Chapter 13 plan was confirmed. The Court agrees on this point. The Supreme Court has made clear that "506(b) applies only from the date of filing through the confirmation date" because a post-

confirmation application of § 506(b), which *disallows* interest on unsecured claims, would directly

conflict with § 1325, which *requires* the payment of interest on all secured claims. *Rake v. Wade*,

508 U.S. 464, 468 (1993). However, § 506(b)'s discontinued application post-confirmation does not

mean that Bankruptcy Rule 2016's requirements dissipate once a debtor's Chapter 13 plan is

confirmed.

"[Bankruptcy] Rule 2016(a)'s plain language and the Congressional purpose behind the

Federal Bankruptcy Rules of Procedure make 2016(a) applicable post-confirmation as well as pre-

confirmation." *Padilla*, 379 B.R. at 657. Indeed, "[t]he Court cannot administer an estate in a just,

speedy, inexpensive, efficient, and equitable manner without requiring creditors to file a Rule 2016(a)

application for Reimbursable Expenses that creditors seek to collect post-confirmation."[14] *Id.* at 659.

---

[14] In *Sanchez*, this Court held that the Chapter 13 estate remains open if the plan or the order confirming the plan provides as such and other bankruptcy courts have agreed with this assessment. *In re Sanchez*, 372 B.R. at 301-02; *see also, e.g., In re Colon*, 345 B.R. 723, 727 (Bankr. D. Kan. 2005) (determining that the Chapter 13 estate continues to exist if the plan or the order confirming it provides as such). Additionally, some bankruptcy courts have determined that the Chapter 13 estate remains in place post-confirmation to include the debtor's newly acquired property. *See, e.g., Barbosa v. Soloman*, 235 F.3d 31, 37 (1st Cir. 2000) (determining that the Chapter 13 estate continues to exist post-confirmation and continues to be funded by the debtor's regular income); *In re Van Stelle*, 354 B.R. 157, 170-71 (Bankr. W.D. Mich. 2006) (determining that the Chapter 13 estate continues post-confirmation regardless of whether all the pre-confirmation property of the estate re-vests in the debtor). *United States v. Holden*, 258 B.R. 323, 326 (D. Vt. 2000) (determining that even though the pre-confirmation chapter 13 estate may re-vest in the debtor, the post-confirmation Chapter 13 estate continues to consist of property that the debtor acquires post-confirmation). Others have determined that the Chapter 13 estate exists post-confirmation but that it is comprised solely of property acquired by the debtor that is necessary to fund the plan. *See, e.g., Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) (determining that the Chapter 13 estate consists only of income received by the debtor necessary to fund the plan); *In re Foreman*, 378 B.R. 717, 721-22 (Bankr. S.D. Ga. 2007) (determining that the post-confirmation Chapter 13 estate consists only of property acquired by the debtor post-confirmation that is required for plan payments).

Here, because the named Plaintiffs' plans provide that their respective Chapter 13 estates shall remain open until a discharge is granted—the specific plan language is that "[p]roperty of the estate shall vest in the debtors upon entry of the discharge order"—their bankruptcy estates will remain open post-confirmation pursuant to this Court's holding in *Sanchez*. *In re Sanchez*, 372 B.R. at 301-02. Moreover, this Court also has core jurisdiction over claims, such as those brought by the Plaintiffs, that "arise under" the Bankruptcy Code even though a debtor's Chapter 13 case may be closed. Indeed, by setting out a separate category of jurisdiction for those proceedings that "arise in" a debtor's bankruptcy case, Congress evinced its intention that § 1334(b)'s alternative provision for "arising under" jurisdiction *not* be conditioned on whether a particular bankruptcy case remains open. Congress could have limited "arising under" jurisdiction to claims "arising under title 11 *and* arising in a case under title 11," but it did not. Congress chose to list the categories of jurisdiction conjunctively.

When previously ruling on Wells Fargo's Motion to Strike Jury Demand, this Court determined that Bankruptcy Rule 2016's requirements continue to apply after the Chapter 13 plan is confirmed even if § 506(b) does not. *Wilborn*, 2008 WL 2078089, at *2 ("[D]espite the fact § 506(b) does not apply to post-confirmation charges, Rule 2016 continues to apply to those charges as long as an estate is still in existence." (citing *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 306-07 (Bankr. S.D. Tex. 2007))).

Additionally, requiring creditors to conform with Bankruptcy Rule 2016 post-confirmation allows this Court to ensure that its confirmation orders are complied with.[15] Wells Fargo's mortgage contracts, at least with respect to the named Plaintiffs, only allow Wells Fargo to collect "reasonable" fees and expenses. [Docket No. 26, Ex. A-F.] As the court recognized in *Padilla*, a debtor's contract rights with its home mortgage lender are subsumed under each Chapter 13 debtor's plan and are thus incorporated into this Court's order confirming the plan. *Padilla*, 379 B.R. at 657. This merits an application of Bankruptcy Rule 2016 after a Chapter 13 debtor's plan is confirmed because "[w]ithout 2016(a), parties in interest, the chapter 13 trustee, the debtor and the Court would have no meaningful ability to determine whether mortgage lenders are complying with § 1327(a) or whether mortgage lenders are collecting unauthorized fees and expenses in violation of an order

---

[15] That Bankruptcy Rule 2016 may work to ensure that any post-petition and post-confirmation fees are "reasonable" in accordance with Wells Fargo's mortgage contract with the respective Plaintiffs is not to suggest that an action to enforce Bankruptcy Rule 2016 is one that arises from state contract law. Rather, the plaintiffs have evoked this Court's broad authority under § 105(a) to allow or disallow reimbursable expenses that have been collected pursuant to a contract. As this Court previously held in *Sanchez*,

> The Court does not need to find a private right of action under § 506(b) or Rule 2016 to conclude that "§ 506(b) and Rule 2016 create rights and duties for creditors in bankruptcy cases. A creditor may be entitled to payment of professional fees under its contract with a debtor, but before those funds will be paid from the bankruptcy estate, the creditor must affirmatively demonstrate the reasonableness of the fees to the court after notice. If a creditor elects to ignore the law to obtain such fees, it is well within the Court's authority under § 105 to rectify that error."

*Sanchez*, 372 B.R. at 311-12 (quoting *In re Tate*, 253 B.R. at 668).

31

confirming a chapter 13 plan." *Id.* at 659. Bankruptcy Rule 2016 allows the court to make an informed decision as to whether a lender has complied with 11 U.S.C. § 1327(a) and this Court's order confirming the Chapter 13 plans of purported class members who incurred fees post confirmation. As the court cogently reasoned in *Rodriguez*,

> A mortgage lender may not disrupt the payment allocation scheme provided by the plan by diverting amounts dedicated to arrearages or principal and interest without court approval. Until the Court reviews a Rule 2016 application and issues an order modifying the payment allocation scheme provided by a Chapter 13 plan, a mortgage lender may not collect Reimbursable Expenses without violating the order confirming the debtor's plan.

*Rodriguez*, 396 B.R. at 443. Bankruptcy Rule 2016 requires creditors to seek court approval before assessing and collecting fees throughout the bankruptcy process—from the date of filing until the date the case is closed.

Therefore, this Court has subject matter jurisdiction to enforce 11 U.S.C. § 1327(a) and its confirmation orders in the cases of purported class members whose plans have been confirmed.

### 3. The Plaintiffs' claims are not disguised breach of contract actions.

This Court has already determined in a prior ruling in this suit that, based on the causes of action contained in the Complaint, the Plaintiffs "seek exclusively equitable relief based upon alleged violations of § 506(b) and Rule 2016, and seek no legal relief based upon a breach of contract theory." *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, Adv. No. 07-3481, 2008 WL 2078089, at *4 (Bankr. S.D. Tex. May 15, 2008). That the exempt homesteads form the basis for the Plaintiffs' contractual relationship with Wells Fargo is not to suggest that the homesteads, or even the contracts themselves, form the basis for the Plaintiffs' claims. The Plaintiffs' claims are not based on their contracts with Wells Fargo, but, as this Court has concluded above, arise solely from Wells Fargo's

32

alleged violations § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016.

Wells Fargo essentially contends that any action that depends on a contract for its existence is, at bottom, a state law breach of contract action that falls outside the bankruptcy court's jurisdiction. Based on this logic, this Court—or any bankruptcy court—would not have jurisdiction over most disputes between debtors and creditors because a debtor's obligation to repay the debt frequently arises out of state law contract rights. Indeed, Wells Fargo's interpretation of subject matter jurisdiction would deprive the bankruptcy courts of jurisdiction over most bankruptcy cases because "the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy." *Wood*, 825 B.R. at 96. The Fifth Circuit has explained that "the distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings" because "the bankruptcy judge is constantly enmeshed in state-law issues." *Id*; *see also Southmark*, 163 F.3d at 930 ("[T]he state law origin of [the debtor's] claims is not dispositive. The jurisdictional statute expressly provides that the applicability of state law to a proceedings is insufficient in itself to render it a non-core proceeding."). Indeed, when passing § 1334(b), Congress took care to note that "[s]ubsection (b) is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts." H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), U.S. Code & Cong. & Admin. News pp. 5963, 6401.

Contrary to Wells Fargo's position, the rights asserted by the Plaintiffs in the Complaint are not state law breach of contract claims; rather, as this Court has already noted, the claims arise solely under bankruptcy law. The Plaintiffs' claims are specific to § 506(b) of the Bankruptcy Code and

Bankruptcy Rule 2016. The rights provided by these provisions are fundamentally different from the Plaintiffs' and class members' rights under their respective contracts with Wells Fargo. Indeed, courts have repeatedly acknowledged that, unlike contract rights, bankruptcy rights are sacrosanct. *See, e.g., Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1110 (6th Cir. 1983) (recognizing the principle that "one cannot contract away bankruptcy rights"); *Sullivan v. Sullivan (In re Sullivan)*, 62 B.R. 465, 473 (Bankr. N.D. Miss. 1986) (same).

Additionally, that the Plaintiffs have requested relief in the form of disgorgement does not deprive this Court of subject matter jurisdiction. Even if a request for equitable disgorgement constituted a claim for damages—which it does not—"[w]hen core jurisdiction exists over the substantive legal issues raised in the complaint with respect to all members of the class, this jurisdiction is not lost simply because the relief sought is damages." *Aiello*, 231 B.R. at 705. Further, the Plaintiffs' request for equitable disgorgement of improperly assessed fees is not a contract remedy, but rather a request that this Court exercise its "broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings . . . to order disgorgement as a sanction to debtor's counsel for nondisclosure." *Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995). This Court has equitable power under 11 U.S.C. § 105(a) "to facilitate the implementation of other Bankruptcy Code provisions" and "is well within its authority if it exercises its equitable powers to enforce a specific code provision." *Bessette v. AVCO Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) (internal marks and citations omitted). The Supreme Court recently determined that bankruptcy courts have "broad authority . . . to take *any action that is necessary or appropriate* 'to prevent an abuse of process' described in § 105 of the Code." *In re Marrama*, 548 U.S. 365, 375 (2007) (emphasis added). This Court may therefore invoke § 105(a) to fashion an "equitable remedy

34

[that] is demonstrably necessary to preserve a right elsewhere provided in the Code." *Id.* The equitable disgorgement sought by the Plaintiffs on behalf of themselves and the purported class members constitutes such a remedy.

This Court concludes that the Plaintiffs' claims are not state law breach of contract claims for damages, but rather are claims to enforce specific provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (specifically, § 506(b) and Bankruptcy Rule 2016). This Court therefore has core jurisdiction to adjudicate such claims and broad equitable authority to grant the relief requested by the Plaintiffs (declaratory judgment, injunction, and equitable disgorgement).

## IV. CONCLUSION

The Plaintiffs' claims fall squarely within § 1334(b)'s provision for core jurisdiction. The Plaintiffs' claims to enforce § 506(b) of the Bankruptcy Code and Bankruptcy Rule 2016 both "arise under" the Bankruptcy Code and "arise in" the respective bankruptcy cases of the Plaintiffs and the purported class members.

For all of the reasons set forth herein, the Court concludes that it has subject matter jurisdiction over this adversary proceeding pursuant to § 1334(b) and the District Court's standing order of reference. Therefore, Wells Fargo's 12(b)(1) Motion should be denied. An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this opinion.

Signed on this 18th day of February, 2009.

Jeff Bohm
United States Bankruptcy Judge

35